**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC, | |
|     Plaintiff, | |
|     v. | |
| XEROX CORPORATION and DAHILL OFFICE TECHNOLOGY CORPORATION D/B/A XEROX BUSINESS SOLUTIONS SOUTHWEST, | CIVIL ACTION NO. 6:21-cv-638-ADA |
|     Defendants. | |

**DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT</u>**

**<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARD ........................................................................................... 2

III.   ARGUMENT ....................................................................................................... 3

     A.    AP'S ALLEGATIONS OF DIRECT INFRINGEMENT IN COUNTS I-IV
          SHOULD BE DISMISSED, BECAUSE THEY FAIL TO PLAUSIBLY STATE
          THAT THE ASSERTED CLAIMS COVER ALL IMPLEMENTATIONS OF
          THE INDUSTRY STANDARDS UPON WHICH AP RELIES. .......................... 3

     B.    AP HAS FAILED TO ALLEGE XEROX HAD THE KNOWLEDGE
          REQUIRED TO ADEQUATELY ALLEGE INDIRECT INFRINGEMENT IN
          COUNTS I-III. ................................................................................................ 8

          1.    American Patents' Induced Infringement Claims Should Be Dismissed,
                 Because Its Allegations Are Threadbare Recitations of the Elements of
                 Induced Infringement and Fail to Meet the Plausibility Standard for
                 Pleadings. ................................................................................................ 9

               a.    AP's Allegations of Knowledge Are Insufficient, Because They
                      Are Conclusory. .......................................................................... 10

               b.    AP's Boilerplate Allegations of Specific Intent Are Insufficient. 11

          2.    AP's Contributory Infringement Claims Should Also Be Dismissed,
                  Because AP Has Failed to Adequately Plead All the Required Elements. 13

     C.    AMERICAN PATENTS FAILS TO ALLEGE XEROX HAD THE
          KNOWLEDGE AND EGREGIOUS CONDUCT REQUIRED TO PROVE
          WILLFUL INFRINGEMENT IN COUNTS I-III. ............................................... 14

          1.    AP Failed to Plausibly Plead That Xerox Had the Requisite Knowledge of
                  the Unexpired Patents. ............................................................................. 15

          2.    AP Has Failed to Adequately Plead Egregious Conduct. ......................... 17

IV.   CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
No. 13-cv-365, 2014 U.S. Dist. LEXIS 90379 (W.D. Tex. May 12, 2014) ...........................11

*Aguirre v. Powerchute Sports LLC*,
No. SA-10-CV-0702 XR, 2011 U.S. Dist. LEXIS 65003 (W.D. Tex. June 17,
2011) ........................................................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................2, 3, 14, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................14

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2008).................................................................................11

*Castlemorton Wireless, LLC v. Bose Corp.*,
2020 U.S. Dist. LEXIS 211735 (W.D. Tex. Jul. 22, 2020) ....................................10

*Commil USA, LLC v. Cisco Sys.*,
575 U.S. 632 (2015).................................................................................................10

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)............................................................................9, 10

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2021)........................................................................3, 4, 13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754, 131 S. Ct. 2060 (2011).....................................................................10

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
897 F.2d 508 (Fed. Cir. 1990).................................................................................16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016).................................................................................15, 16, 17

*Hypermedia Navigation LLC v. Google LLC*,
No. 18-cv-06137-HSG, 2019 U.S. Dist. LEXIS 56803 (N.D. Cal. April 2,
2019) .................................................................................................................11, 14

*Inhale, Inc v. Gravitron, LLC*,
No. 1-18-CV-762-LY, 2018 U.S. Dist. LEXIS 223241 (W.D. Tex. Dec. 10,
2018) ........................................................................................................................16

*Iron Oak Techs., Inc.*, 6:17-cv-00143-RP-JCM, 2017 U.S. Dist. LEXIS 221346, at
  \*12 (W.D. Tex. Nov. 28, 2017) ..............................................................9, 10, 13, 14

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
  No. 1:14-cv-134-LY, 2015 U.S. Dist. LEXIS 74262 (W.D. Tex. Mar. 24,
  2015) ................................................................................................................9, 11, 12

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*,
  No. 5:11-cv-163-XR, 2013 U.S. Dist. LEXIS 78624 (W.D. Tex. June 4, 2013) ...................13

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
  No. 4:17-CV-2372, 2018 U.S. Dist. LEXIS 152075 (S.D. Tex. July 31, 2018)....................16

*Matthews International Corp. v. Biosafe Engineering, LLC*,
  695 F.3d 1322 (Fed. Cir. 2012)..........................................................................................3

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006)......................................................................................3, 4

*Parity Networks, LLC v. Cisco Systems, Inc.*,
  No. 6:19-CV-00207-ADA, No. 6:19-CV-00209-ADA, 2019 U.S. Dist. LEXIS
  144094 (W.D. Tex. July 2019) ..............................................................12, 13, 15, 16

*Pers. Care Prods. v. Hawkins*,
  No. A-07-CA-1020 LY, 2009 U.S. Dist. LEXIS 66840 (W.D. Tex. Aug. 3,
  2009) .................................................................................................................................3

*SRI Int'l, Inc. v. Cisco Sys.*,
  930 F.3d 1295, 1309 (Fed. Cir. 2019)...............................................................................17

*Stragent, LLC v. BMW of N. Am., LLC*,
  2017 U.S. Dist. LEXIS 156084 (E.D. Tex. Mar. 3, 2017)......................................................7

*VLSI Techn. LLC v. Intel Corp.*,
  No. 6-19-cv-00254-ADA, 2019 U.S. Dist. LEXIS 155285 (W.D. Tex. Aug.
  06, 2019) .....................................................................................................................11, 16

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010)......................................................................................9, 13

**Statutes**

35 U.S.C. § 271(b) ..................................................................................................9, 10

35 U.S.C. § 271(c) ..................................................................................................9, 14

35 U.S.C. § 284.............................................................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ...........................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................2

## I.      INTRODUCTION

Defendants Xerox Corporation ("Xerox") and Dahill Office Technology Corporation ("Dahill") (collectively "Defendants") move to dismiss the Complaint filed by Plaintiff American Patents LLC ("AP") (Dkt. 1), in which AP alleges that Xerox infringes U.S. Patent Nos. 7,088,782 ("'782 patent"), 7,310,304 ("'304 patent"), 7,706,458 ("'458 patent"), and 6,847,803 ("'803 patent") (collectively, "Asserted Patents").   AP's Complaint is flawed in several respects, warranting its dismissal.

First, rather than comparing the asserted patent claims to Xerox's accused products to allege infringement, AP instead largely compares the claims to third-party documents that reference various standards developed and promoted by the Institute of Electrical and Electronics Engineers ("IEEE").   Apparently, AP's infringement theory is that, since Xerox's products are allegedly capable of "supporting" these IEEE standards, if the IEEE standards infringe, then so do Xerox's products. However, Counts I-IV of the Complaint fail to adequately allege infringement by industry standard compliance, because AP's allegations and the cited documents make clear that (1) even if Xerox were practicing the standards, that would not necessarily lead to infringement of any asserted claim, and (2) to the extent Xerox's products "support" certain aspects of the standards, AP has failed to plead direct infringement of any claim by Xerox or any of its customers. For example, alleging that a Xerox product is capable of "supporting" wireless printing does not adequately allege that the Xerox product actually *performs* wireless printing, which is required by the asserted patent claims.   And since the accused Xerox products are used in corporate settings and commercial print shops, where files are sent to the printers via hard wired LAN connections rather than wirelessly (i.e., by "WiFi"), AP cannot in good faith even assert that the products actually infringe any of the asserted claims.   Furthermore, the accused Xerox products cannot operate over WiFi unless optional third-party wireless LAN USB adapters are installed.   For at

1

least these reasons AP's direct infringement claims should be dismissed.

Second, in Counts I-III and the Additional Allegations Regarding Infringement, AP alleges that Xerox indirectly and willfully infringes the '782 patent, the '304 patent, and the '458 patent (collectively, "Unexpired Patents"). However, AP has failed to adequately plead that Xerox had the required pre-suit knowledge of the Unexpired Patents. To the extent that AP's Complaint informed Xerox of the Unexpired Patents, AP has not and cannot allege the type of egregious conduct required to sustain any award of enhanced damages. For at least these reasons AP's indirect and willful infringement claims should be dismissed as to both Xerox's pre- and post-filing business activities.

Consistent with this Court's recent holdings on these issues, Defendants respectfully request this Court dismiss AP's claims of direct, indirect, and willful infringement, without leave to amend.

## II.   LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff "fails to state a claim upon which relief can be granted." A plaintiff must plead a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Labels and conclusions" and a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[N]aked assertion[s]" devoid of "further factual enhancement" also do not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotations omitted) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* A court need not accept as true "[t]readbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Nor is a court "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quotations and citations omitted). A court is also not obligated to accept as true "bald assertions," *Matthews Int'l Corp. v. Biosafe Engineering, LLC,* 695 F.3d 1322, 1327 (Fed. Cir. 2012), or "unsupported conclusions, unwarranted inferences or deductions," *Pers. Care Prods. v. Hawkins*, No. A-07-CA-1020 LY, 2009 U.S. Dist. LEXIS 66840, at *16 (W.D. Tex. Aug. 3, 2009) (citation and quotations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. The plausibility of a claim requires more than the possibility of misconduct. *Id.*

In this case, AP's direct, indirect, and willful infringement allegations have failed to cross "the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680.

## III.   ARGUMENT

### A.   AP'S ALLEGATIONS OF DIRECT INFRINGEMENT IN COUNTS I-IV SHOULD BE DISMISSED, BECAUSE THEY FAIL TO PLAUSIBLY STATE THAT THE ASSERTED CLAIMS COVER ALL IMPLEMENTATIONS OF THE INDUSTRY STANDARDS UPON WHICH AP RELIES.

AP alleges that Xerox has infringed the Asserted Patents only by virtue of having received Wi-Fi Alliance certificates for certain products. However, AP fails to allege that practicing the standards *necessarily* leads to infringement of its claims. Nor has AP compared the claims to the accused products or plausibly stated facts that even suggest that the accused products implement the cited sections of the standard.

Infringement is determined by comparing the claims to the accused product or process. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2021); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). In rare cases, rather than compare the claims to the accused product or process, a plaintiff can instead compare the claims to an industry standard

promulgated to promote uniformity in a particular technological area (e.g., wireless networks). *Fujitsu Ltd.*, 620 F.3d at 1327. But "[o]nly in the situation where a patent covers *every* possible implementation of a standard will it be enough to prove infringement by showing standard compliance." *Fujitsu Ltd.*, 620 F.3d at 1328 (emphasis added). The standard does not cover all implementations when it does not provide the level of specificity required to establish that practicing the standard would always—or necessarily—result in infringement. *Id.* at 1327. Standards compliance alone would also not establish infringement if the relevant section of the standard is optional. *Id.* at 1327–28. If the standard at issue lacks specificity or the claimed feature is optional, then the patent owner's complaint must compare the claims to the accused products or allege that the accused products implement any relevant optional sections of the standard. *Id.* at 1328.

In regard to the asserted method claims, i.e., claim 30 of the '782 patent and claim 1 of the '803 patent, sale of products accused of practicing asserted method claims does not constitute direct infringement, and AP has failed to state plausible facts that anyone performs all steps of any method claim. *See* Dkt. 1, at ¶¶ 21, 22, 65, 66; *Ormco Corp.*, 463 F.3d at 1311. At paragraph 20 of the Complaint, AP alleges, "Xerox used products and/or systems including, for example, its Xerox AltaLink B8000 series, Xerox AltaLink B8100 series, Xerox A1taLink C8000 series, and Xerox A1taLink C8100 series families of products that include 802.11n and above *capabilities* ("accused products"): …." (emphasis added); *see also id.* at ¶¶ 35, 48, 64, 91. In order to adequately plead infringement, it is not enough that the accused products are *capable* of performing the claimed method, AP needed but failed to plead actual infringement. *See Fujitsu Ltd.*, 620 F.3d at 1327. From a practical standpoint, commercial print jobs are performed in the accused Xerox products by communicating print jobs to the accused products via hard-wired LAN connections, not wirelessly as is required to infringe. In fact, the AltaLink® 8000 Series, C8000

Series, and C8100 Series printer webpages are silent regarding wireless connectivity, and the webpage for the AltaLink® 8100 Series printers explains that they require an "optional Xerox® Dual Band Wireless Kit" that is manufactured by third-parties to enable wireless communication. *See* Dkt. 1, at ¶¶ 20, 35, 48, 64.

Similarly, AP's allegations that "the accused products **support** IEEE 802.11 n/ac standards" and that "an 802.11 n/ac compliant WiFi access point **can** act as a transmitter" fall short of establishing that the accused products actually include this capability and that the steps of producing a frame of data are performed. *See* Dkt. 1, at ¶¶ 22, 23. AP has failed to allege that the accused products must implement at least one claim element that is necessary to the standard. AP specifically pleads facts, including "as part of the 802.11n standard, two preamble formats are defined for frames: HT-mixed format and HT-greenfield format," but AP does not allege that Xerox even practices this implementation, or that there are no other implementations possible.

In fact, AP failed to show that any of the alleged functions are necessary to the standard, or that those functions map to specific claim limitations. If such limitations are necessary to the standard such that practicing the standard would by default result in infringement, then AP might have been able to plead direct infringement by comparing the asserted claims to the applicable standard rather than the accused products. But AP made no such showing, nor did they even attempt to.

For example, claim 30 of the '782 patent recites:

A method for synchronizing a Multi-Input Multi Output (MIMO) Orthogonal Frequency Division Multiplexing (OFDM) system in time and frequency domains, the method comprising the steps of:

producing a frame of data comprising a training symbol that includes a synchronization component that aids in synchronization, a plurality of data symbols, and a plurality of cyclic prefixes;

transmitting the frame over a channel;

5

receiving the transmitted frame;

demodulating the received frame;

synchronizing the received demodulated frame to the transmitted frame Such that the data symbols are synchronized in the time domain and frequency domain;

wherein the synchronizing in the time domain comprises coarse time synchronizing and fine time synchronizing.

The method of claim 30 requires one device to perform the producing and transmitting steps and another device to perform the receiving, demodulating, and synchronizing steps. However, AP has not plausibly alleged how the accused Xerox products perform the functions of both the transmitter and the receiver. Apparently realizing this deficiency, AP states, "[a]lternatively, on request from accused products, an 802.11 n/ac compliant WiFi access point can act as a transmitter and perform the step of producing a frame of data …." However, AP fails to identify any specific transmitter and fails to identify any receiver in the accused Xerox products. Because the accused Xerox products are incapable of performing each and every method step, Count I should be dismissed.

Similarly, claim 1 of the '803 patent requires "receiver signals are received with at least a first antenna (ANT1) and a second antenna (ANT2)." However, AP fails to identify any antennas in the accused Xerox products, let alone antennas that perform the remainder of the claimed limitations. Therefore, Count IV should also be dismissed.

AP has also failed to adequately plead direct infringement of the asserted apparatus claims, i.e., claim 1 of the '304 patent and claim 1 of the '458 patent. *See* Dkt. 1, at ¶¶ 36, 37, 49, 50. For example, at paragraph 37 of the Complaint, AP alleges, "[t]he accused products **support** IEEE 802.11 n/ac standards and MIMO technology" (emphasis added); *see also id.* at ¶¶ 40, 50. However, AP would still need to allege that the accused products are configured as claimed. Similarly, stating that the accused products "include 802.11 n *capabilities*" is not equivalent to alleging that the accused products include any claimed element. Dkt. 1, at 35 (emphasis added); *see also id.* at ¶¶ 48, 91. Moreover, the third party sources cited by AP indicate that several features

6

are "optional." Dkt. 1, at ¶ 37, 38 ("HT-mixed format and HT-greenfield format transmissions **can be** generated using a transmitter consisting of the following blocks: … an FEC encoder **may include** a binary convolutional encoder … This **may include** one of the following:…" (emphasis added); *see also id.* at ¶¶ 51, 55 ("processing **can** be done in several ways" indicate the applicable features are optional (emphasis added)). Thus, AP has failed to allege direct infringement of the apparatus claims in Counts II and III.

Nor has AP even attempted to compare the asserted claims to the accused Xerox products. In Count II, AP fails to identify any structures in the accused Xerox products that purportedly meet the encoder, Orthogonal Frequency Division Multiplexing (OFDM) modulator, or transmitting antennas recited in claim 1 of the '304 patent. *See* Dkt. 1, at ¶¶ 38-41. Similarly, in Count III, AP fails to identify any structures in the accused Xerox products that would satisfy the OFDM modulator, transmitting antennas, receiving antennas OFDM demodulators, pre-amplifier, local oscillator, mixer, analog-to-digital converter, cyclic-prefix remover, serial-to parallel converter, or discrete Fournier transform stage, all of which are required by claim 1 of the '458 patent. *See* Dkt. 1, at ¶¶ 50-57. In the absence of any specific facts, AP's allegations of direct infringement of the '304 and '458 patents cannot survive a motion to dismiss.

Recently a motion to dismiss has been granted on the basis of failing to adequately plead infringement in conjunction with standard compliance. In *Stragent, LLC v. BMW of N. Am., LLC*, 2017 U.S. Dist. LEXIS 156084, at *12 (E.D. Tex. Mar. 3, 2017), the magistrate judge recommended granting a motion to dismiss, because "Stragent's allegation that 'the patents in suit **address** [AUTOSAR-compliant] systems'" lacked any facts suggesting that the asserted claims cover **all** implementations of the standard. (emphasis added) And Stragent failed to connect the accused products to the asserted claims or the standard to the asserted claims. *Id.* Here AP's claims are similarly deficient and should also be dismissed.

7

Additionally, rather than show how the standards practice each element of the claimed inventions, AP is forced to rely on a number of third-party references for several of the claim elements, tacitly acknowledging that the standards themselves do not provide enough detail to cover all implementations. *See*, *e.g.*, Dkt. 1 at ¶¶ 22-28, 37-41, 50-57, 64, 66. In fact, the sole citations to IEEE standards are at paragraph 28 of the Complaint (citing 802.11-2007), paragraph 50 (citing 802.11a-1999), and paragraphs 66-68 (citing 802.11-2016). And the third-party reference most cited by AP, http://luci.subsignal.org/~jow/802.11n-2009.pdf, is a dead internet link. As such, AP fails to fairly put Xerox on notice of AP's claims. The link to http://www.ahltek.com/WhitePaperspdf/802.11-20%20specs/802.11a-1999.pdf is also dead. The remaining articles are not authorities on the IEEE standards referenced. Even if they were authoritative, which they are not, these third-party sources fail to establish that practicing the relevant standard would necessarily result in practicing each and every specific limitation of the asserted claims. On the contrary, these third-party sources describe features as "typical" rather than necessary to implementing the standard. *See*, *e.g.*, Dkt. 1 at ¶ 25 ("Typical PLCP receive procedures are shown in Figure 20-23 and Figure 20-24")), ¶ 28. Again, these allegations merely suggest one way the standard might be implemented and serve as an admission by AP that there are multiple implementations which do not necessarily infringe any asserted claim. Nor do these citations to third-party references regarding the standards connect Xerox's products or their use to any claim limitation in a way that plausibly pleads direct infringement.

At least for these reasons AP's direct infringement claims of Counts I-IV fail to meet minimum pleading standards and should be dismissed.

**B.   AP HAS FAILED TO ALLEGE XEROX HAD THE KNOWLEDGE REQUIRED TO ADEQUATELY ALLEGE INDIRECT INFRINGEMENT IN COUNTS I-III.**

AP alleges that Xerox has indirectly infringed the '782 patent, the '304 patent, and the '458

patent. *See* Dkt. 1, at ¶¶ 73–100. However, both induced infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c) require direct infringement by another as a predicate. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.,* 609 F.3d 1308, 1317 (Fed. Cir. 2010). Because AP failed to adequately plead direct infringement, as explained above, AP's indirect infringement claims also fail and should be dismissed.

Additionally, both induced and contributory infringement require knowledge of the asserted patents, and AP has failed to adequately plead that Xerox had the requisite knowledge prior to the lawsuit, which provides another basis to dismiss AP's indirect infringement claims. *See Iron Oak Techs., Inc.*, 6:17-cv-00143-RP-JCM, 2017 U.S. Dist. LEXIS 221346, at *15 (W.D. Tex. Nov. 28, 2017) ("Conclusory allegations, or legal conclusions masquerading as factual conclusions, will not suffice to prevent a motion to dismiss."); *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1:14-cv-134-LY, 2015 U.S. Dist. LEXIS 74262, at *7–*8 (W.D. Tex. Mar. 24, 2015); *see also Aguirre v. Powerchute Sports LLC,* No. SA-10-CV-0702 XR, 2011 U.S. Dist. LEXIS 65003, at *9 (W.D. Tex. June 17, 2011) ("To the extent [plaintiff] relies on knowledge of [plaintiff's] patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement.").

### 1.   American Patents' Induced Infringement Claims Should Be Dismissed, Because Its Allegations Are Threadbare Recitations of the Elements of Induced Infringement and Fail to Meet the Plausibility Standard for Pleadings.

In order to adequately plead induced infringement, AP would need to allege specific facts showing that: (1) Xerox knew of the asserted patent; (2) Xerox knowingly induced a third party to perform certain acts with the specific intent to induce the third party to directly infringe the patent; and (3) as a result of Xerox's alleged inducement, the third party directly infringed the patent. *See DSU Med. Corp.*, 471 F.3d at 1305; *Iron Oak Techs., Inc.*, 2017 U.S. Dist. LEXIS 221346, at *12.

9

AP's threadbare recitation of these elements fails to meet the pleading standard required to survive a motion to dismiss.

The knowledge element requires the defendant to have had actual knowledge or willful blindness of the asserted patent's existence. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 2068 (2011); *Iron Oak Techs., Inc. v. Acer Am. Corp.*, 2017 U.S. Dist. LEXIS 221346, at *12. However, knowledge based on willful blindness exists only where "(1) the defendant . . . subjectively believe[d] that there [was] a high probability that a fact exists and (2) the defendant . . . [took] deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc.*, 563 U.S. at 769. Further, the Supreme Court held that "[i]nduced infringement under §271(b) requires knowledge that the induced acts constitute patent infringement." *Id.* at 765–66; *see also Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639 (2015).

### a.   AP's Allegations of Knowledge Are Insufficient Because They Are Conclusory.

First, AP has failed to adequately plead that Xerox knew of any of the Unexpired Patents before the complaint was filed. Instead, AP merely alleges, "Xerox has had actual knowledge of the '782 Patent at least as of the date when it was notified of the filing of this action." Dkt. 1, at ¶ 29, *see also* Dkt. 1, at ¶¶ 42, 58, 96. This Court has deemed conclusory allegations such as these insufficient to survive a motion to dismiss. For example, in *Castlemorton Wireless, LLC v. Bose Corp.*, 2020 U.S. Dist. LEXIS 211735, at *13 (W.D. Tex. Jul. 22, 2020), Castlemorton pled that "Bose has had knowledge of the '421 patent since at least the service of this Complaint or shortly thereafter," and that "Bose knew of the '421 patent and knew of its infringement, including by way of this lawsuit," but these conclusory statements were insufficient to support allegations of pre-suit knowledge. Similarly, AP has failed to adequately plead that Xerox had actual knowledge of any AP patent prior to the lawsuit, so AP's claims of induced infringement should be dismissed on this basis alone.

AP has also failed to adequately plead knowledge by alleging willful blindness. At paragraph 94 of the Complaint, AP states, "Xerox has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights." Even if this allegation were true—which it is not—such a policy would be insufficient to establish willful blindness. *See VLSI Techn. LLC v. Intel Corp.,* No. 6-19-cv-00254-ADA, 2019 U.S. Dist. LEXIS 155285, at *3 (W.D. Tex. Aug. 06, 2019) ("The Court finds that Intel's policy that forbids its employees from reading patents held by outside companies or individuals is insufficient to meet the test of willful blindness."). Here again, AP pleads no allegation from which it could be plausibly inferred that Xerox subjectively believed that there was a high probability that the '782 patent, the '304 patent, or the '458 patent existed. Thus, there is no basis from which to conclude that Xerox was willfully blind to the existence of these patents. For this reason alone, AP's induced infringement claims should be dismissed.

### b.   AP's Boilerplate Allegations of Specific Intent Are Insufficient.

AP has also failed to plead plausible facts that Xerox knowingly induced a third party to perform certain acts with the specific intent to induce the third party to directly infringe the patent. *See Affinity Labs of Tex., LLC v. Toyota Motor N. Am.,* No. 13-cv-365, 2014 U.S. Dist. LEXIS 90379, at *6 (W.D. Tex. May 12, 2014); *Joao Control & Monitoring Sys.*, 2015 U.S. Dist. LEXIS 74262, at *9; *Broadcom Corp. v. Qualcomm Inc.,* 543 F.3d 683, 697-98 (Fed. Cir. 2008). Allegations that are no more than "bald conclusions" couched as facts fail to satisfy the elements of indirect infringement and should be dismissed. *Hypermedia Navigation LLC v. Google LLC,* No. 18-cv-06137-HSG, 2019 U.S. Dist. LEXIS 56803, at *7–*8 (N.D. Cal. April 2, 2019) ("[T]he complaint only states bald conclusions that an end user following YouTube instructions results in infringement. In no way does the complaint detail how an end user would infringe Hypermedia's

11

patents.").

For example, AP's induced infringement claims should be dismissed, because AP makes only conclusory allegations, such as: "Xerox took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes one or more claims of the patents-in-suit, including, for example, Claim 30 of the '782 Patent, Claim 1 of the '304 Patent, and Claim 1 of the '458 Patent" (Dkt. 1, at ¶ 74; *see also Id.* at ¶ 84), and "Xerox performed these steps, which constitute induced infringement, with the knowledge of the '782 Patent, the '304 Patent, and the '458 Patent and with the knowledge that the induced acts would constitute infringement." *Id.* at ¶ 86. Such bald conclusions do not merit the presumption of truth and should be dismissed.

AP has also alleged that Xerox has induced infringement by "advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner." Dkt. 1, at ¶ 75. But the complaint does not identify any specific directions, advertisements, or instructions that supposedly guide the user to infringe. *Id.* Rather, these are activities that any business conducts and are not indicative of any specific intent to induce or contribute to infringement. The Western District of Texas, and other courts, have consistently dismissed induced infringement claims based on similar ordinary business actions that lack any specific connection to the allegedly infringing activity. *Joao Control & Monitoring Sys.*, 2015 U.S. Dist. LEXIS 74262, at *13; *Parity Networks, LLC v. Cisco Systems, Inc.*, No. 6:19-CV-00207-ADA, No. 6:19-CV-00209-ADA, 2019 U.S. Dist. LEXIS 144094, at *5 (W.D. Tex. July 2019) (holding that to "adequately plead a claim of induced infringement" that "a plaintiff must allege a specific intent to induce infringement, which is 'evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'"); *Kinetic Concepts, Inc. v. Wake Forest Univ.*

*Health Scis.,* No. 5:11-cv-163-XR, 2013 U.S. Dist. LEXIS 78624, at *20–*21 (W.D. Tex. June 4, 2013) (stating that "guidance for the pleading requirements for indirect infringement, a court must look to *Twombly* and *Iqbal*" that "requires that the alleged infringer . . . possessed specific intent to encourage another's infringement"). In the absence of any factual allegation, this Court should dismiss AP's induced infringement claims for failing to allege any specific intent to induce infringement.

Therefore, the Complaint fails to plead facts that satisfy all the elements required for induced infringement. Thus, those allegations and any requested relief based on those allegations should be dismissed.

### 2.    AP's Contributory Infringement Claims Should Also Be Dismissed Because AP Has Failed to Adequately Plead All the Required Elements.

In Counts I-III and the Additional Allegations Regarding Infringement, AP alleges contributory infringement of the '782 patent, the '304 patent, and the '458 patent. *See* Dkt. 1, at ¶¶ 29, 42, 58, 89, 93. In order to survive a motion to dismiss its contributory infringement claims, AP would need to plausibly plead facts that show: (1) Xerox had knowledge of the Unexpired Patents; (2) Xerox sold products especially made for infringing use; (3) Xerox had knowledge of the infringing use; (4) the products had no substantial noninfringing use; and (5) there exists an underlying act of direct infringement by another as a predicate. *See Wordtech Sys., Inc.,* 609 F.3d at 1317 (stating that a contributory infringer must possess knowledge to support a finding of infringement); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *Parity Networks, LLC v. Cisco Sys., Inc.*, 2019 U.S. Dist. LEXIS 144094, at *5 (W.D. Tex. July 26, 2019); *Iron Oak Techs., LLC*, 2017 U.S. Dist. LEXIS 221346, at *12. AP's contributory infringement allegations are based on a wholly conclusory "formulaic recitation of the elements of a cause of action" insufficient to sustain its claim. *See Twombly,* 550 U.S. at 555.

AP's allegations that the "accused products have special features that are specially

designed to be used in an infringing way and that have no substantial uses other than ones that infringe the '782 Patent, the '304 Patent, and the '458 Patent…." (Dkt. 1, at ¶ 90) and that the "special features constitute a material part of the invention of one or more of the claims of the '782 Patent, the '304 Patent, and the '458 Patent and are not staple articles of commerce suitable for substantial non-infringing use" (*Id.* at ¶ 92) are boilerplate representations lacking any factual support that Xerox's products have no non-infringing uses. AP does not identify any special features. As bare legal conclusions parroting the 35 U.S.C. § 271(c) legal standard, they should be disregarded. AP's allegations are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 687; *Hypermedia,* 2019 U.S. Dist. LEXIS 56803, at *3; *see also Iron Oak Techs., LLC*, 2017 U.S. Dist. LEXIS 221346, at *2–*3 (recommending dismissal of "threadbare" contributory infringement claims that failed to show "enough factual matter"). On the contrary, it is well-known and not disputed that Xerox's products are capable of non-infringing uses that do not rely on wireless communication. For example, in commercial contexts, files are sent to Xerox's printers via wired LAN components, not through wireless communications. And third-party wireless LAN USB adapters are required to enable WiFi. Accordingly, for this additional reason, AP's allegations of contributory infringement are insufficient and should be dismissed.

In sum, AP's claim for contributory infringement, like its claim for induced infringement, should be dismissed because it relies on conclusory allegations that are wholly devoid of facts.

### C. AMERICAN PATENTS FAILS TO ALLEGE XEROX HAD THE KNOWLEDGE AND EGREGIOUS CONDUCT REQUIRED TO PROVE WILLFUL INFRINGEMENT IN COUNTS I-III.

AP alleges that Xerox willfully infringed the Unexpired Patents in Counts I-III and the Additional Allegations Regarding Infringement of the Complaint. *See* Dkt. 1, at ¶¶ 30, 43, 59, 99. However, a claim of willful infringement requires knowledge of the asserted patent. *Halo Elecs.,*

*Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932-33 (2016). Although 35 U.S.C. § 284 gives courts discretion to "increase the damages up to three times the amount found or assessed" for patent infringement, enhanced damages are generally reserved for "egregious cases of misconduct beyond typical infringement." *Halo Elecs., Inc.*, 136 S. Ct. at 1933. This "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. Nor must enhanced damages be awarded following a finding of egregious misconduct. *See id.* at 1933. Rather, "courts should continue to take into account the particular circumstances of each case." *Id.* at 1934. A plaintiff must plead willfulness with sufficient articulation of the relevant facts.

To state a claim for willful infringement, AP must allege facts plausibly showing that as of the time of the claim's filing, Xerox: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent. *See Parity Networks, LLC*, 2019 U.S. Dist. LEXIS 144094, *7–*8 (citations omitted). "Further, a plaintiff should plead willfulness with sufficient articulation of the relevant facts. *Id.* As explained above, AP failed to adequately plead that Xerox had pre-suit knowledge of the Unexpired Patents. Therefore, AP's allegations of pre-suit willful infringement claim should be dismissed on at least that ground. Additionally, AP has not—and cannot—plausibly allege that Xerox's post-filing activities could ever support a finding of willful infringement or any award of enhanced damages. *See M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 U.S. Dist. LEXIS 152075, at *14-15 (S.D. Tex. July 31, 2018) (contrasting "garden-variety" cases with post-complaint "escalation" of infringement).

### 1.     AP Failed to Plausibly Plead That Xerox Had the Requisite Knowledge of the Unexpired Patents.

To sustain its claim for willful infringement, as a threshold matter, AP must allege facts

sufficient to plausibly infer that, among other things, Xerox knew of the Unexpired Patents. *See Halo,* 136 S. Ct. at 1933 (2016) ("knowledge of the actor at the time of the challenged conduct" must be assessed). AP fails to do so here for the same reasons that it cannot establish pre-expiration knowledge of the Unexpired Patents for indirect infringement. Under settled Federal Circuit law, "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 511 (Fed. Cir. 1990); *see also Inhale, Inc v. Gravitron, LLC,* No. 1-18-CV-762-LY, 2018 U.S. Dist. LEXIS 223241, at *9 (W.D. Tex. Dec. 10, 2018) (dismissing willful infringement claims because the "complaint fails to allege facts raising a reasonable inference of pre-suit knowledge of the [asserted patent]").

AP's bare and manufactured statement that "Xerox has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights" is also insufficient to allege knowledge through willful blindness. *VLSI Technology, LLC v. Intel Corporation*, 2019 U.S. Dist. LEXIS 155285, at *3 (W.D. Tex. Aug. 6, 2019). Because AP's conclusory allegations lack any facts that would support knowledge, e.g., because plaintiff did not send a demand letter to Xerox, and Xerox did not cite the asserted patents in its own patent applications, Xerox's motion to dismiss AP's willful infringement claims should be granted. *Id.* at *4; *cf. Parity Networks, LLC*, 2019 U.S. Dist. LEXIS 144094, at *6–*7 (denying defendant's motion to dismiss, because the plaintiff pleaded that it sent defendant two letters identifying the asserted patents before filing suit, "plac[ing] into controversy the issue of what pre-suit knowledge Defendant had of the asserted patents.").

For these two reasons, American Patents' willful and indirect infringement claims should be dismissed.

16

### 2.   AP Has Failed to Adequately Plead Egregious Conduct.

In addition, AP's willfulness claim fails for the independent reason that AP has failed to sufficiently plead egregious misconduct required under *Halo.* AP alleges that "Xerox's actions are at least objectively reckless as to the risk of infringing valid patents and this objective risk was either known or should have been known by Xerox," and that "Xerox's direct and indirect infringement of the '782 Patent, the '304 Patent, and the '458 Patent is, has been, and/or continues to be willful, intentional, deliberate, and/or in conscious disregard of American Patents' rights under the patents." Dkt. 1, at ¶¶95, 99. These allegations are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 687. The Complaint contains no specific factual allegations whatsoever with respect to egregious conduct, and therefore cannot sufficiently articulate how any of Xerox's actions amount to an "egregious" case of infringement. *See Halo,* 136 S. Ct. at 1932.

In this case, AP's sole allegation of egregious behavior appears to be the unsupported assertion of a "policy or practice of not reviewing the patents of others" that supposedly left Xerox "willfully blind of American Patents' patent rights." Dkt. 1, at ¶ 94. The Federal Circuit has explicitly addressed this argument and found a policy of not reviewing patents cannot support a finding of willfulness. *See SRI Int'l, Inc. v. Cisco Sys.,* 930 F.3d 1295, 1309 (Fed. Cir. 2019). With no facts for this Court to draw a reasonable inference of egregious conduct, AP's willful infringement claim should be dismissed.

## IV.   CONCLUSION

For the reasons stated above, Xerox respectfully requests that AP's claims for direct, induced, contributory, and willful infringement, i.e., Counts I-IV and the Additional Allegations Regarding Infringement, be dismissed in their entirety with prejudice.

Respectfully submitted,

Dated: September 3, 2021                    /s/ *Barry K. Shelton*

Barry K. Shelton
Texas State Bar No. 24055029
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
bshelton@sheltoncoburn.com
(512) 263-2165 (Telephone)
(512) 263-2166 (Facsimile)

Thomas Hoehner  (*pro hac vice*)
Denis J. Sullivan (*pro hac vice*)
Genevieve M. Halpenny (*pro hac vice*)
**BARCLAY DAMON, LLP**
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202
(315) 425-2700 (Telephone)
(315) 703-6249 (Facsimile)
thoehner@barclaydamon.com
dsullivan@barclaydamon.com
ghalpenny@barclaydamon.com

*Attorneys for Defendants Xerox*
*Corporation and Dahill Office*
*Technology Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system.

_/s/ Barry K. Shelton_
Barry K. Shelton