**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>    Plaintiff,<br><br>      v.<br><br>XEROX CORPORATION and DAHILL OFFICE TECHNOLOGY CORPORATION D/B/A XEROX BUSINESS SOLUTIONS SOUTHWEST,<br><br>    Defendants. | CIVIL ACTION NO. 6:21-cv-638-ADA<br><br>**JURY TRIAL DEMANDED** |

**AMERICAN PATENTS LLC'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   AMERICAN SUFFICIENTLY PLEADED DIRECT INFRINGEMENT ............................1

    A.    American Plausibly Alleged Xerox's Infringement of the Asserted Patents Through Xerox's Particular Implementations of 802.11n and Above Standards........................... 4

    B.    American Plausibly Alleged Infringement of the Asserted Method Claims................... 6

III.  AMERICAN SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT .........................9

    A.    American Plausibly Alleged Knowledge Based on Willful Blindness ......................... 11

    B.    American Plausibly Alleged Specific Intent to Induce Infringement ........................... 15

    C.    American Plausibly Alleged Contributory Infringement ............................................... 16

IV.   AMERICAN SUFFICIENTLY PLEADED WILLFUL INFRINGEMENT AS TO THE UNEXPIRED PATENTS ...................................................................................................18

V.    IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED..................................20

VI.   CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (en banc).............................................................................. 7, 8

*American Patents LLC v. Acer Inc.*,
  No. 4:18-cv-697-ALM, Dkt. 35 (E.D. Tex. May 17, 2019) ...................................... 13

*American Patents LLC v. AsusTek Computer Inc.*,
  No. 4:18-cv-698-ALM, Dkt. 33 (E.D. Tex. May 17, 2019) ...................................... 13

*American Patents LLC v. Hisense Co. Ltd.*,
  4:18-cv-768-ALM, Dkt. 85 (E.D. Tex. May 17, 2019) ........................................... 13

*American Patents LLC v. Hisense Co. Ltd.*,
  4:18-cv-768-ALM, Dkt. 86 (E.D. Tex. May 17, 2019) ........................................... 13

*American Patents LLC v. Hisense Co. Ltd.*,
  4:18-cv-768-ALM, Dkt. 87 (E.D. Tex. May 17, 2019) ........................................... 13

*American Patents LLC v. HP Inc.*,
  No. 4:18-cv-700-ALM, Dkt. 58 (E.D. Tex. May 17, 2019) ...................................... 13

*American Patents LLC v. Huawei Device USA, Inc.*,
  No. 4:18-cv-672-ALM, Dkt. 44 (E.D. Tex. May 17, 2019) ...................................... 13

*American Patents LLC v. LG Electronics Inc.*,
  No. 4:18-cv-673-ALM, Dkt. 48 (E.D. Tex. May 17, 2019) ...................................... 13

*American Patents LLC v. Panasonic Corporation of North America*,
  No. 4:18-cv-766-ALM, Dkt. 32 (E.D. Tex. May 17, 2019) ...................................... 13

*American Patents LLC v. Samsung Electronics America, Inc.*,
  No. 4:18-cv-674-ALM, Dkt. 43 (E.D. Tex. May 17, 2019) ...................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 1

*Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*,
  No. 1-17-CV-291-LY, Dkt. No. 37 (W.D. Tex. Mar. 14, 2018) ............................... 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................... 1, 3, 13

*Bush Seismic Techs. LLC v. Am. Gem Soc.*,
  No. 2:14-cv-1809-JRG, 2016 WL 9115381 (E.D. Tex. Apr. 13, 2016) ................... 11

*Castlemorton Wireless, LLC v. Bose Corp.*,
    2020 WL 6578418 (W.D. Tex. Jul. 22, 2020) ................................................................ 10

*CreAgri, Inc. v. Pinnaclife, Inc.*,
    2013 WL 11569 (N.D. Cal. 2013) ..............................................................................6-7

*Cywee Group Ltd. v. Huawei Device Co. Ltd.*,
    No. 2:17-cv-495-WCB, 2018 WL 3819392 (E.D. Tex. Aug. 10, 2018) ...................... 10, 15

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018) ................................................................................ 3

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ................................................................................ 10

*Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*,
    No. 2:16-cv-00553, Dkt. No. 45 (E.D. Tex. Feb. 14, 2017) .................................... 2

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
    2018 WL 2149736 (E.D. Tex. 2018) ........................................................................ 19

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ................................................................................ 5

*Georgetown Rail Equipment Co. v. Holland L.P.*,
    876 F.3d 1350 (Fed. Cir. 2017) ................................................................................ 7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) .............................................................................. 11, 13, 14, 20

*Griggs v. Hinds Junior Coll.*,
    563 F.2d 179 (5th Cir. 1977) .................................................................................. 20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ............................................................................................ 19

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) ................................ 8

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017) ...................................................................... 15, 16, 17

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) .................................................................................. 18

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..................................................................................... 17, 18

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).......................................................................................... 7

*M&C Innovations, LLC v. Igloo Prods. Corp.*,
   No. 4:17-cv-2372, 2018 WL 4260713 (S.D. Tex. Jul. 31, 2018) ...................................... 10

*Motiva Patents, LLC v. Sony Corp.*,
   408 F. Supp. 3d 819 (E.D. Tex. 2019)............................................................ 12, 13, 14, 17

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020)........................................................................................ 10

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. Jul. 26, 2019)................ 3, 18, 19

*Potter v. Bexar Cnty. Hosp. Dist.*,
   195 Fed. Appx. 205 (5th Cir. 2006)................................................................................. 20

*Salazar v. HTC Corp.*,
   No. 2:16-cv-01096-JRG-RSP, 2018 WL 1310007 (E.D. Tex. Feb. 14, 2018)...................... 3

*Script Security Solns. L.L.C. v. Amazon.com, Inc.*,
   170 F. Supp. 3d 928 (E.D. Tex. 2016)........................................................................ 12, 13

*SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*,
   839 F.3d 422 (5th Cir. 2016) .......................................................................................... 20

*SRI Int'l., Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019)........................................................................................ 19

*SRI Int'l, Inc. v. Cisco Sys., Inc.,*
   No. 2020-1685, 2021 WL 4434231 (Fed. Cir. Sept. 28, 2021) .................................... 18, 19

*Stragent, LLC v. BMW of North America*,
   2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) .................................................................. 4, 5

*Techno View IP, Inc. v. Sony Interactive Entertainment LLC*,
   No. SACV 17-01268-CJC (JCGx), 2018 WL 3031518 (C.D. Cal. Apr. 18, 2018) ............... 8

*Travel Sentry, Inc. v. Tropp*,
   877 F.3d 1370 (Fed. Cir. 2017)......................................................................................... 8

*Uniloc USA, Inc. v. Avaya Inc.*,
    No. 6:15-CV-01168-JRG, 2016 WL 7042236 (E.D. Tex. May 13, 2016) .......................... 1-2

*Valinge Innovation AB v. Halstead New England Corp.*,
    2018 WL 2411218 (D. Del. May 29, 2018) .................................................................. 18, 19

*VLSI Tech., LLC v. Intel Corp.*,
    No. 6:19-cv-254-ADA, Dkt. 52 (W.D. Tex. Aug. 6, 2019) ................................................. 14

*Wooten v. McDonald Transit Assocs., Inc.*,
    788 F.3d 490 (5th Cir. 2015) .......................................................................................... 12

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ...................................................................................... 10

## Statutes and Other Authorities

Fed. R. Civ. P. 8(a)(2) .......................................................................................................... 18

Fed. R. Civ. P. 15(a) ............................................................................................................. 20

## Other

Fernandez, D., *Move Over Letterman:  Top 10 Most Common IP Management*
    *Mistakes for New Companies*, Pat. Strategy & Mgmt. (July 1, 2003) ....................................12

Krazit, T., *Why Tech Companies Want Engineers To Ignore Patents*
    *When Designing Products*, Gigaom (Nov. 2, 2011) .............................................................12

Lee, T., *It's Normal for Software Companies to Ignore Patents*,
    Forbes Contributor post (Feb. 27, 2012) ..............................................................................12

Lemley, M., *Ignoring Patents*,
    2008 Mich. St. L. Rev. 19 (2008) ...................................................................................11, 12

Lemley, M. & Tangri, R., *Ending Patent Law's Willfulness Game*,
    18 Berkeley Tech. L.J. 1085 (2003) .....................................................................................12

Taylor, E. & Von Tersch, G., *A Proposal to Shore Up the Foundations*
    *of Patent Law that the Underwater Line Eroded*,
    20 Hastings Comm. & Ent. L.J. 721 (1998) .........................................................................12

## I.     INTRODUCTION

American's original complaint in this case alleged that Xerox infringed four patents.[1] Xerox has moved to dismiss the complaint for failure to state a claim of direct infringement as to the asserted patents, and indirect and willful infringement as to the three unexpired patents.

Xerox's challenge to American's direct infringement allegations should be rejected. American filed a 100+ page complaint that sets forth not just the specific Xerox products that infringe the asserted patents, but American's theories of infringement by the products as to each element of specific claims, providing cites to Xerox websites showing accused products. American also identified certain features of the accused instrumentalities involved in the infringement. These allegations provide fair notice of American's claims against Xerox and the grounds on which they rest, thereby putting Xerox on notice as to what it must defend. Xerox implicitly admits as much by setting forth what amounts to a motion for summary judgment of non-infringement based on these allegations. Xerox's arguments are unfounded and incorrect.

Xerox's challenge to American's indirect allegations and willful infringement allegations against the three unexpired patents should also be rejected. Contrary to Xerox's arguments, willful blindness of those patents is sufficient at the pleading stage to state a claim for indirect infringement and willfulness.

## II.    AMERICAN SUFFICIENTLY PLEADED DIRECT INFRINGEMENT

American has met the *Twombly* and *Iqbal* pleading requirements to support a plausible claim of direct infringement.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  A complaint for direct patent infringement "must explicitly plead facts to plausibly support the assertion that a defendant 'without authority, makes, uses, offers to sell, or sells any patented

---

[1] The four asserted patents are U.S. Patent Nos. 7,088,782 ("the '782 Patent"), 7,310,304 ("the '304 Patent"), 7,706,458 ("the '458 Patent"), and 6,847,803 ("the '803 Patent").

invention during the term of the patent.'" *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-01168-JRG, 2016 WL 7042236, at *2 (E.D. Tex. May 13, 2016).  While courts have not announced "a floor for the direct infringement standard," the Eastern District of Texas has held that the pleading requirement is met where the plaintiff: (1) alleges that a specific product infringes a specific claim; (2) alleges that the product meets all the elements of a specific claim; and (3) incorporates by reference a website illustrating the accused product. *Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*, No. 2:16-cv-00553, Dkt. No. 45, at 4 (E.D. Tex. Feb. 14, 2017). This Court has likewise held that the pleading requirement is met where the plaintiff: (1) identifies the allegedly infringing products; (2) describes the patent; and (3) describes the corresponding accused technology.  *See Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*, No. 1-17-CV-291-LY, Dkt. No. 37, at 3 (W.D. Tex. Mar. 14, 2018).

Xerox contends that American has not plausibly alleged direct infringement of the '782 Patent, the '304 Patent, the '458 Patent, and the '803 Patent. But American's allegations against Xerox for these patents go well beyond what *Dynocom* and *Baker Hughes* found sufficient.  For instance, as to each of the asserted patents, American has:

(a)   alleged that specific Xerox products were involved in Xerox's infringement of specific claims (*see, e.g.*, Compl. at ¶¶ 20, 21, 35, 36, 48, 49, 64, 65) (identifying the Xerox AltaLink B8000 series, AltaLink B8100 series, AltaLink C8000 series, and AltaLink C8100 series families of products as specific products that infringe or were used to infringe Claim 30 of the '782 Patent, Claim 1 of the '304 Patent, and Claim 1 of the '458 Patent, and identifying the Xerox B8100 series and AltaLink C8100 series families of products as specific products that infringe or were used to infringe Claim 1 of the '803 Patent);

(b)   alleged that Xerox infringed each element of specific claims with respect to the accused Xerox products (*see, e.g.*, Compl. at ¶¶ 22-28 (allegations regarding each element of Claim 30 of the '782 Patent); ¶¶ 37-41 (allegations regarding each element of Claim 1 of the '304 Patent); ¶¶ 50-57 (allegations regarding each element of Claim 1 of the '458 Patent); and ¶¶ 66-68 (allegations regarding each element of Claim 1 of the '803 Patent);

(c)   incorporated by reference web pages illustrating the accused Xerox products (*see, e.g.*, Compl. at ¶¶ 20, 35, 48, and 64);

(d)   included screenshots to help identify the accused products involved in Xerox's infringement (*see, e.g.*, Compl. at ¶¶ 20, 35, 48, and 64 (screenshots of the Xerox AltaLink B8000 series, AltaLink B8100 series, AltaLink C8000 series,

and AltaLink C8100 series families of products and of materials describing them)); and

(e)     identified specific features of the accused products involved in Xerox's infringement (*see, e.g.*, Compl. at ¶¶ 20, 35, 48, and 64).

As the preceding paragraphs show, American has more than satisfied Rule 8's requirements for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). American is only required to present "enough fact[s] to raise a reasonable expectation that discovery will reveal" that Xerox is liable for patent infringement. *See Twombly*, 550 U.S. at 556; *see also Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing dismissal of complaint where allegations "specifically identified the three accused products" and alleged that the products "meet 'each and every element of at least one claim'"); *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, 2018 WL 1310007 at *2 (E.D. Tex. Feb. 14, 2018) ("this Court has previously recognized that an allegation a specific accused product or system infringes a patent is sufficient to meet the pleading requirements of the rules, and a plaintiff need not allege what specific components, features, or capabilities infringe"), *adopted*, 2018 WL 1306615 (E.D. Tex. Mar. 13, 2018).

Xerox seems to be requesting early infringement contentions.  But it will receive those shortly under this Court's Standing Orders.  Xerox's attempt to use a motion to dismiss to effectively force even earlier disclosure of infringement contentions should not be encouraged. *See Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) ("The Court finds that Plaintiff's pleadings are sufficient and that any deficiencies will necessarily be addressed when Plaintiff serves its infringement contentions as is required.").

Xerox contends that the complaint fails to plead a plausible allegation of direct infringement because, according to Xerox, the complaint relies solely on the fact that Xerox practices a standard to demonstrate infringement, but fails show that all implementations of that standard necessarily infringe, and the complaint does not otherwise "compare the asserted claims to the accused Xerox products." Mot. at 3-8.  Both of these arguments are simply incorrect.

3

A.     American Plausibly Alleged Xerox's Infringement of the Asserted Patents
       Through Xerox's Particular Implementations of 802.11n and Above Standards

American's complaint pleads on information and belief, as it is entitled to do, that

Xerox's particular **implementation** of certain wireless standards is covered by the asserted

claims.  Xerox's particular MIMO implementation (a specific example being an AltaLink copier)

has 2 transmit antennas and 2 receive antennas and uses the 802.11n and above standards, and

Xerox's particular beamforming implementation (a specific example being another AltaLink

copier) has 2 transmit antennas and 2 receive antennas and uses beamforming.  American pleads

and explains its theory of how the Xerox accused products meet each claim element, citing

Xerox websites, Xerox WiFi Alliance certification documents, the 802.11n and above standards

themselves, and technical literature regarding implementation of the 802.11n and above

standards.  American's complaint simply does not, as Xerox argues, rely solely on the fact that

Xerox products practice the 802.11n and above wireless standards.

Xerox's cases do not support its argument that a pleading which **refers** to an industry

standard must show, at the motion to dismiss stage, proof that all implementations of that

standard must infringe the standard.  Instead, the cases address instances where the only

infringement was 100% based on a standard—whereas here, American relies on the standard for

some elements, Xerox's documentation and optional implementation of the standard for other

elements, and technical literature suggesting that companies like Xerox implement the standard

in a certain way for other elements.  For example, in *Stragent, LLC v. BMW of North America,*

*LLC*, the complaint, which totaled 8 pages, made only "three primary allegations related to

infringement," without offering explanation or even addressing the claims.  2017 WL 2821697,

*3 (E.D. Tex. Mar. 3, 2017) ("First, Plaintiff identifies the claim(s) from each asserted patent

that it alleges Defendants infringe.  Second, Plaintiff argues that 'the patents in suit address

[AUTOSAR-compliant] systems.'  Third, Plaintiff submits that Defendants' automobile vehicles

and automobile parts ('the accused products') comply with the AUTOSAR Standard.") (internal

citation omitted).  With such minimal allegations, the court found that "Stragent must connect

either the accused products to the asserted claims, or the AUTOSAR Standard to the asserted claims," noting that "Stragent's allegation that 'the patents in suit address [AUTOSAR-compliant] systems' does not do either."  *Id*. at *5.

As noted above, American here provides detail above and beyond the complaint in *Stragent*, pleading that (1) each and every element is met by the accused products and/or their use by Xerox, (2) an exemplary Xerox implementation includes 2 transmit antennas, 2 receive antennas, and complies with the relevant standards, and (3) Xerox webpages, Xerox certifications from the WiFi Alliance, technical literature regarding implementation of the relevant standards, and the relevant standards support the allegations.  The complaint in *Stragent*, on the other hand, generically stated that "[t]he patents in suit address [AUTOSAR-compliant] systems" and that Defendants infringed because their products were AUTOSAR-compliant.  *Id*.

Xerox's other case, *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010),[2] is likewise distinguishable.  First and foremost, *Fujitsu* relates to summary judgment standards, not pleading standards.  Second, the court in *Fujitsu* addressed an infringement read that was based **solely** on the standard, unlike here.  *Id*. at 1326-27.

Xerox also offers arguments regarding the application of the wireless standards to Xerox's products.  First, Xerox argues that American has not pleaded that Xerox is actually using a number of the claimed apparatus limitations.  But American's allegations are straightforward and plainly state as much, followed by screenshots of detailed evidence.  *See, e.g.*, Dkt. 1 ¶ 38 ("The accused products include an encoder configured to process data to be transmitted within an OFDM system, the encoder further configured to separate the data onto one or more transmit diversity branches (TDBs). … According to the IEEE 802.11n standard, an encoder block is present in a transmitter section of general OFDM systems.  The encoder(s) output(s) the data onto multiple transmit chains (transmit diversity branches) for further processing.")  Xerox also argues that at least two preamble formats are defined in the wireless

---

[2] At page 3 of its motion and in the Table of Authorities, Xerox appears to have mistakenly used the year "2021" for the *Fujitsu* case.

standards, and that "AP does not allege that Xerox even practices this implementation, or that there are no other implementations possible."  Mot. at 5.  But diagrams in other paragraphs of the complaint (*see, e.g.*, Dkt. 1, ¶ 22) show that all preamble formats in the relevant standard have the training fields that are referred to in the paragraph Xerox complains about (Dkt. 1, ¶ 23). Xerox's arguments fall short when compared to the full allegations and evidence.[3]

B.    <u>American Plausibly Alleged Infringement of the Asserted Method Claims</u>

Xerox appears to argue that the Complaint's allegations regarding the '782 patent and the '803 patent are insufficient because Xerox believes it does not infringe—a belief that is, of course, irrelevant at this stage.  For example, Xerox argues that the Complaint's allegations of direct infringement of the '782 patent and the '803 patent are flawed because Xerox says that the complaint does not "state plausible facts that anyone performs all steps of any method claim." Mot. at 4.  Xerox says this is a problem because "it is not enough that the accused products are capable of performing the claimed method, AP needed but failed to plead actual infringement." *Id*.  Xerox is wrong for at least two reasons.

First, Xerox is not only accused of infringement by selling.  Rather, the Complaint alleges that Xerox "***used*** Xerox branded products and/or systems" (regarding the '782 Patent), "made, had made, ***used***, imported, provided, supplied, distributed, sold, ***and/or*** offered for sale Xerox branded products and/or systems" (regarding the '803 Patent), and "directly infringed (literally and/or under the doctrine of equivalents)" "at least Claim 30 of the '782 Patent" and "at least Claim 1 of the '803 Patent."  Dkt. 1 ¶¶ 20, 21, 64, 65 (emphasis added).  Allegations that Xerox "used" the accused products to infringe identified method claims are necessarily allegations that Xerox performs the methods recited in those claims using the accused products.

---

[3] Xerox also complains that certain web link citations in the Complaint are no longer active, arguing that this "fails to fairly put Xerox on notice of AP's claims."  Mot. at 8.  This is incorrect for multiple reasons.  First, the web links that Xerox complains about are still available on the archive.org website for Xerox to view.  Second, the screenshots of those websites that are in the complaint are screenshots of the standards themselves.  Those screenshots, along with the other allegations and information in the Complaint, fairly put Xerox on notice of the claims against it.

*See CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 WL 11569, *2 (N.D. Cal. 2013) (denying motion to dismiss direct infringement claim of a method patent because pleading the use of an accused product was sufficient to imply performance of the claimed method) (citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009)).

Second, American's infringement allegations are only limited to infringement of method claims for the expired '803 patent.  American alleges infringement of the '782 patent ***generally***, not just infringement of the exemplary claims (Claim 30 of the '782 patent).  (Dkt. 1 at ¶¶ 20, 21, 29, 30, 31, 32).  The '782 patent includes multiple apparatus claims that were infringed when Xerox made, had made, imported, provided, supplied, distributed, sold, and/or offered for sale the accused products, as well as when Xerox used the accused products.  So it makes sense for American to have alleged those infringing acts as well.

Xerox then argues that the complaint does not identify limitations of claim 30 of the '782 patent relating to transmitting and receiving.  But the allegations of the Complaint plausibly support multiple theories of direct infringement that are not limited to a single-actor/single-router theory, including that Xerox jointly infringes in connection with its affiliates, with retailers and other business partners, and/or with its customers and end-users, at least using the claimed method.

To be liable for direct infringement, each step of a claimed method must be "performed by ***or attributable to*** a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (emphasis added).  Likewise, "direct infringement by use of a system claim requires a party to use each and every element of a claimed system," but that "does not require a party to 'exercise physical or direct control over each individual element of the system.'"  *Georgetown Rail Equipment Co. v. Holland L.P.*, 867 F.3d 1229, 1239 (Fed. Cir. 2017).  An entity will be liable for another's acts: "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."  *Akamai*, 797 F.3d at 1022-23.

Here, the Complaint pleads a plausible theory of direct infringement at least based on

Xerox's direction or control of their affiliates and end-users.  "[E]vidence may be sufficient to support an inference of direction or control when (1) the benefits of a particular service or product can be obtained only if third parties comply with instructions given by the defendant, and (2) the instructions direct the third parties to perform acts that constitute recited steps in the asserted method claims."  *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 1:18-cv-452, 2019 WL 330515, at *3 (D. Del. Jan. 25, 2019) (Bryson, Cir. J., by designation) (citing *Akamai* and *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017)).

American's Complaint meets this standard. It alleges that the Xerox defendants "lead and are part of an interrelated group of companies which together comprise one of the world's largest manufacturers of copiers and printers, including under the Xerox brand," that the Xerox defendants and their affiliates are "part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices," and that the Xerox defendants "regularly contract with customers regarding equipment or services that will be provided by their affiliates on their behalf."  Dkt. 1 ¶¶ 4, 6, 7.  In addition, the Complaint alleges that Xerox "took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes[.]"  *Id.* ¶ 74.  These steps include, for example, "advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner."  *Id.* ¶ 75.  In *IOENGINE*, similar allegations were sufficient to plead a claim of joint infringement between the defendant and its customers.  2019 WL 330515, at *3; *see also Techno View IP, Inc. v. Sony Interactive Entertainment LLC*, No. SACV 17-01268-CJC(JCGx), 2018 WL 3031518, at *7 (C.D. Cal. Apr. 18, 2018) (plaintiff plausibly alleged direct infringement by defendants' instructing and encouraging third parties, including customers and users, to infringe by providing instructions and advertising how to use the accused video game consoles in an infringing manner).

Finally, Xerox argues that, with respect to claim 1 of the '803 patent, "AP fails to identify

any antennas in the accused Xerox products[.]" Mot. at 6.  Xerox is incorrect.  First, the

complaint alleges that Xerox has infringed the method steps that use a first antenna (ANT1) and

a second antenna (ANT2).  Second, citations to the standard confirm that beamforming involves

multiple antennas in at least one wireless station.  Third, the exemplary products for the '803

patent, the AltaLink® B8100 Series and AltaLink® C8100 Series families of products, were

already shown in screenshots included in previous paragraphs of the complaint to include two

transmitting antennas (Tx) and two receiving antennas (Rx):



(Source : https://api.cert.wi-fi.org/api/certificate/download/public?variantId=78739)   (Source : https://api.cert.wi-fi.org/api/certificate/download/public?variantId=78703)

Dkt. 1 ¶ 48.[4]

## III.     AMERICAN SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT

Xerox's first argument regarding indirect infringement is a tacked-on claim that "AP's

indirect infringement claims … fail and should be dismissed" "[b]ecause AP failed to adequately

plead direct infringement[.]"  Mot. at 8-9.  But Xerox has offered no legal or logical support for

this proposition.  (For example, whether Xerox directly infringes a patent is an analytically

---

[4] Xerox also attempts to argue that "commercial print jobs are performed in the accused Xerox products by communicating print jobs to the accused products via hard-wired LAN connections, not wirelessly as is required to infringe," pointing to certain cited webpages for the exemplary accused products.  Mot. at 4-5 (citing Dkt. 1, ¶¶ 20, 35, 48, 64).  First, Xerox improperly attempts to bring in facts outside of the pleadings when referring to commercial print jobs. Second, Xerox completely ignores other information on those webpages and other documents cited in those same paragraphs that are inconsistent with its position.  For example, the B8000 Series and C8000 Series websites state that those products are "Xerox ConnectKey Technology enabled."  Additional documents show webpages directed to "Xerox Wireless Printers" that state "Several Xerox wireless printers – such as Xerox ConnectKey technology-enabled AltaLink® … printers … include many options for mobile and cloud print capabilities[.]"  Likewise, Xerox's certifications with the WiFi Alliance show all of the exemplary products to include 2 transmitting antennas and 2 receiving antennas and to be certified for 802.11n or above wireless.

distinct question from whether Xerox induces its customers to infringe that patent.)  Instead,

Xerox offers only citations to *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)

and *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1317 (Fed. Cir. 2010).

Mot. at 9.  But Xerox's proposition does not follow from either *DSU Med.* or *Wordtech*.  At best

for Xerox, the cited portions of *DSU Med.* and *Wordtech* stand for the unremarkable propositions

that (a) a jury instruction requiring an act of direct infringement to establish inducement is

proper, and (b) a party is entitled to a new trial where a jury finds contributory infringement

without finding direct infringement related to that contributory infringement.  471 F.3d at 1305;

609 F.3d at 1317.  But those cases say ***nothing*** about pleading standards or plausible allegations

of indirect infringement, or how those standards might relate to whether a separate claim for

direct infringement was properly made.

Xerox next argues that American has not adequately pleaded the knowledge required for

indirect infringement.  But American has plausibly alleged indirect infringement based on pre-

suit knowledge of the asserted patents.[5]  Indirect infringement under 35 U.S.C. § 271(b)-(c)

---

[5] Xerox requests that American's induced infringement and willfulness claims be dismissed in
their entirety for failure to adequately plead pre-suit knowledge.  However, both claims may
properly be based on post-suit conduct and knowledge as of the filing of the complaint.  *See, e.g.,*
*Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1315-16 (Fed. Cir. 2020) (rejecting
defendant's claim that its "continued infringing activity after this suit was filed cannot support
willfulness"); *Cywee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495-WCB, 2018 WL
3819392, at *2 (E.D. Tex. Aug. 10, 2018) (Bryson, Cir. J., by designation).  The complaint
alleges Xerox's knowledge of the patents-in-suit, Dkt. 1 ¶ 96—and the truth of that fact is now
undeniable—such that American's claims are supported even if Xerox did not have pre-suit
knowledge (which it does).  And, contrary to Xerox's arguments, and unlike the allegations that
Xerox points to in *Castlemorton Wireless, LLC v. Bose Corp.*, 2020 WL 6578418 at *5 (W.D.
Tex. Jul. 22, 2020), American has alleged more than a "garden-variety" infringement case.  Mot.
at 15 (citing *M&C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-cv-2372, 2018 WL
4260713, at *5 (S.D. Tex. July 31, 2018)).  Indeed, American alleged that "Xerox has had actual
knowledge of [the asserted patents] at least as of the date when it was notified of the filing of this
action.  By the time of trial, Xerox will have known and intended (since receiving such notice)
that its continued actions would infringe and actively induce and contribute to the infringement
of one or more claims of [the asserted patents]."  *See, e.g.*, Dkt. 1 ¶ 29.  These allegations show
more than "garden variety infringement" because they show that Xerox deliberately continues its
infringing behavior, taking no action to design around the patent or otherwise avoid

requires actual knowledge of, or willful blindness to, the infringed patent's existence.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011).  Here, American has plausibly pleaded both actual knowledge (post filing) and willful blindness (pre-filing).  In addition, the complaint plausibly pleads the remaining elements of induced and contributory infringement.

A.  American Plausibly Alleged Knowledge Based on Willful Blindness

American has plausibly alleged that Xerox was willfully blind to the existence of the asserted patents before the suit was filed:

> Furthermore, Xerox has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights.  *See, e.g.*, M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008).

(Dkt. 1 at ¶ 94).

As Xerox acknowledges, an allegation of willful blindness is an allegation of knowledge.  *See Global-Tech*, 563 U.S. at 770.  Yet Xerox challenges this allegation by arguing that the complaint "pleads no allegation from which it could be plausibly inferred that Xerox subjectively believed that there was a high probability that the '782 patent, the '304 patent, or the '458 patent existed."  This is a puzzling stance, as the complaint alleges specific policies and affirmative acts of Xerox—*i.e.*, factual allegations.  And the complaint meets the Global-Tech standard by alleging deliberate conduct in the form of creating a policy of not reviewing patents, including the affirmative act of instructing employees not to review the patents of others.  *See* 563 U.S. at 770 (explaining that willful blindness requires "active efforts by an inducer to avoid knowing about the infringing nature of the activities").[6]

---

infringement, despite notice of infringement through the filing of the Complaint.  In the event the Court disagrees that these allegations are sufficient to support post-suit knowledge, American requests leave to amend to add additional allegations, including additional allegations supporting inducement and willfulness subsequent to and based on knowledge from the filing or service of the original complaint.  *See infra* Part V; *Bush Seismic Techs. LLC v. Am. Gem Soc.*, No. 2:14-cv-1809-JRG, 2016 WL 9115381, at *3 (E.D. Tex. Apr. 13, 2016).

[6] Xerox may disagree with American's factual allegations, incorrectly referring to them as "bare" and "manufactured."  But Xerox provides no concrete argument about why those allegations

Indeed, American alleged knowledge in the pre-filing period because it has a good faith belief that discovery will show that Xerox affirmatively instructed its employees to avoid reading the patents of others.  As Professor Mark Lemley has explained, tech companies like Xerox are notorious for adopting such policies, expressly to avoid liability for willfulness:

> ***Virtually everyone does it.***  They do it at all stages of endeavor.  Companies and lawyers tell engineers not to read patents in starting their research, lest their knowledge of the patent disadvantage the company by making it a willful infringer. . . . This ***intentional ignorance*** of patent rights in the hands of others has led some to label major manufacturers in the IT industries "patent pirates."

Ex. 1 [M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008)] at 21-22 (emph. added).[7]  At the pleading stage, American is entitled to all inferences in its favor.

Courts routinely deny motions to dismiss based on the same allegations.  *See Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. 2019); *Script Security Solns. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 938 (E.D. Tex. 2016) (Bryson, Cir. J., by designation) ("Taking all inferences in Script's favor, it has pleaded that defendant took an affirmative action

---

cannot plausibly infer willful blindness.  Regardless, for purposes of this motion, the court must take the allegations as true.  *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

[7] *See also* Edwin H. Taylor & Glenn E. Von Tersch, *A Proposal to Shore Up the Foundations of Patent Law that the Underwater Line Eroded*, 20 Hastings Comm. & Ent. L.J. 721, 737 (1998) ("As matters now stand many companies discourage employees from reading patents.  This presumably lessens the chance that the company will be found to have knowledge of a patent."); Dennis Fernandez, *Move Over Letterman: Top 10 Most Common IP Management Mistakes for New Companies*, Pat. Strategy & Mgmt., July 1, 2003, at 3 ("Additionally, in many cases it may be appropriate for companies, as a matter of policy, to discourage looking at issued patents owned by other entities so as to avoid awareness of potentially infringing patents."); Mark A. Lemley & Ragesh K. Tangri, *Ending Patent Law's Willfulness Game*, 18 Berkeley Tech. L.J. 1085, 1100-01 (2003) ("[I]n-house patent counsel and many outside lawyers regularly advise their clients not to read patents if there is any way to avoid it.  What you do know will certainly harm you, they reason, so it is generally better not to know.  Thus, from the perspective of a potential infringer, ignorance is bliss."); Timothy B. Lee, *It's Normal for Software Companies to Ignore Patents*, Forbes Contributor post (2/27/2012) ("[A]lmost all software companies ignore their competitor's patents."); Tom Krazit, "*Why Tech Companies Want Engineers To Ignore Patents When Designing Products*," Gigaom, Nov. 2, 2011 ("[S]everal companies in the tech industry *actively discourage* their engineers from thinking about whether concepts and products under development might have already been patented . . . .") (emphasis added).

to avoid gaining knowledge of the patents in suit—ignoring all patents as a matter of policy…"). In *Motiva*, the court concluded that nearly identical allegations described two affirmative acts of willful blindness, "each of which is ***independently sufficient*** to satisfy the plausibility standard under [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)]."  408 F. Supp. 3d at 833 (emphasis added).  First, "***[c]reating a policy*** prohibiting review of patents is a specific kind of 'deliberate action[] to avoid learning' of potential infringement."  *Id.*  (citing *Global-Tech*, 563 U.S. at 768) (emphasis added).  Second, the alleged act of "***instructing*** its employees to not review the patents of others" (emphasis added) amounts to "specific acts to implement and enforce [Defendant's] policy of willful blindness."  *Id.* at 834.  As the Court explained, "[e]ither factual allegation—the ***existence*** of the policy or its ***implementation*** in the form of specific acta of willfully blind conduct—is sufficient to state a claim at the pleading stage.  Taken together, the combination of allegations more than suffices [] 'to cross the federal court's threshold.'"  *Id.* (emphasis in original; quoting *Script Security Solutions*, 170 F. Supp. 3d at 935).[8]  Given the

---

[8] In addition to these published decisions, courts have denied motions to dismiss substantially similar willful blindness allegations in several additional cases.  *See American Patents LLC v. Acer Inc.*, No. 4:18-cv-697-ALM (E.D. Tex.) at Dkts. 16 (Jan. 3, 2019) (motion to dismiss), 35 (May 17, 2019) (order denying motion); *American Patents LLC v. AsusTek Computer Inc.*, No. 4:18-cv-698-ALM (E.D. Tex.) at Dkts. 17 (Jan. 11, 2019) (motion to dismiss), 33 (May 17, 2019) (order denying motion); *American Patents LLC v. Hisense Co. Ltd.*, 4:18-cv-768-ALM (E.D. Tex.) at Dkts. 49 (Jan. 18, 2019) (motion to dismiss as to Best Buy defendants), 63 (Feb. 12, 2019) (motion to dismiss as to Sharp Corporation), 65 (Feb. 12, 2019) (motion to dismiss as to TPV defendants), 85 (May 17, 2019) (order denying motion of Best Buy Defendants), 86 (May 17, 2019) (order denying motion of Sharp Corporation), 87 (May 17, 2019) (order denying motion of TPV defendants); *American Patents LLC v. HP Inc.*, No. 4:18-cv-700-ALM (E.D. Tex.) at Dkts. 15 (Dec. 21, 2018) (motion to dismiss), 58 (May 17, 2019) (order denying motion); *American Patents LLC v. Huawei Device USA, Inc.*, No. 4:18-cv-672-ALM (E.D. Tex.) at Dkts. 19 (Dec. 27, 2018) (motion to dismiss), 44 (May 17, 2019) (order denying motion); *American Patents LLC v. LG Electronics Inc.*, No. 4:18-cv-673-ALM (E.D. Tex.) at Dkts. 24 (Dec. 28, 2018) (motion to dismiss), 48 (May 17, 2019) (order denying motion); *American Patents LLC v. Panasonic Corporation of North America*, No. 4:18-cv-766-ALM (E.D. Tex.) at Dkts. 18 (Jan. 14, 2019) (motion to dismiss), 32 (May 17, 2019) (order denying motion); *American Patents LLC v. Samsung Electronics America, Inc.*, No. 4:18-cv-674-ALM (E.D. Tex.) at Dkts. 23 (Dec. 27, 2018) (motion to dismiss), 43 (May 17, 2019) (order denying motion).

close parallels between allegations, the Court should follow the reasoned analysis of *Motiva* and related cases.

As support for its position, Xerox cites, without accompanying argument, to *VLSI Tech., LLC v. Intel Corp.*, No. 6:19-cv-254-ADA, Dkt. 52 (W.D. Tex. Aug. 6, 2019).  But *VLSI* predates *Motiva*, and there is good reason for following *Motiva* instead of *VLSI* because the allegations in American's complaint parallel those in *Motiva* more closely than those in *VLSI*. As explained above, the allegations here describe two separate examples of deliberate conduct in the form of: (1) a policy against reviewing outside patents, and (2) affirmatively instructing employees not to read outside patents.  By contrast, in *VLSI*, the relevant allegation was based solely on a corporate policy,[9] so the Court did not consider—and the decision does not encompass—the separate act of affirmatively instructing employees not to read outside patents. *See VLSI Tech.*, Slip Op. at 1.  So even if the Court's view in *VLSI* was that the existence of a corporate policy did not meet *Global-Tech*'s requirement of affirmative conduct, there can be little doubt that ***actively instructing*** employees not to read patents plausibly describes "active efforts by an inducer to avoid knowing about the infringing nature of the activities."  *See Global-Tech*, 563 U.S. at 770; *Motiva*, 408 F. Supp. 3d at 834.[10]  Thus, *VLSI* does not provide an obstacle to following the majority of decisions confronting this issue, and the Court should deny Xerox's motion.[11]

---

[9] *See* Compl. in *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-cv-254-ADA, Dkt. 1, (W.D. Tex. April 11, 2019) at ¶ 28 (". . . [Intel] was willfully blind to the existence of the [asserted patent] and its infringement of the [asserted patent] based on, for example, its publicly-known corporate policy forbidding its employees from reading patents held by outside companies or individuals.").

[10] American also maintains that the affirmative act of ***creating*** the alleged policy meets the *Global-Tech* requirement of "deliberate conduct."  *See Motiva*, 408 F. Supp. 3d at 833.

[11] In the event the Court were to dismiss American's willful blindness and/or willfulness allegations, it should do so without prejudice consistent with its approach in *VLSI*.  There, the Court recognized that the "best course of action" was to dismiss VLSI's claims "***without prejudice*** to the refiling of these claims after discovery has been conducted."  *VLSI Tech.*, Slip Op. at 1-2 (emph. in orig.).  This approach properly recognizes that the evidence needed to prove American's willful blindness allegation (and, likewise, to plead willful blindness in more detail)

B.  <u>American Plausibly Alleged Specific Intent to Induce Infringement</u>

American also sufficiently pleaded the remaining elements of induced infringement.  A complaint adequately pleads a claim for induced infringement when it alleges knowledge of the patent and intent to infringe.  *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017).  Xerox acknowledges that American alleged inducement by advertising its products, contracting with third parties, selling its products, and distributing "instructions that guide users to use the accused product in an infringing manner."  Mot. at 12 (citing Dkt. 1 ¶¶ 74, 75, 84).  It complains that these acts cannot amount to inducement, however, because they are "based on [] ordinary business actions."  *Id*.  But Xerox's theory is unsupported in the law, and its characterization of American's allegations lacks a basis in reality.

In fact, American provides several pages of factual allegations supporting its indirect infringement claims.  Dkt. 1 ¶¶ 72-100.  These allegations include identification of the accused products, and that Xerox has induced end-users to infringe by using the accused products.  *Id*. ¶¶ 72-74.  And the complaint elaborates as to what active steps Xerox is alleged to have taken.  Id. ¶¶ 74-75 (alleging, *inter alia*, that Xerox has taken the affirmative acts of "advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner"); *see also, e.g., id*. ¶¶ 20, 35, 48 (identifying related documentation).  That alone is sufficient.  *See, e.g., Cywee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495, 2018 WL 3819392, *2 (E.D. Tex. Aug. 10, 2018) (Bryson, Cir. J., by designation) (holding that allegation that "Huawei provides manuals and instructions … and/or provides instructional and support materials on its website that teach and instruct its customers to operate those products in ways that practice the claimed

_____

is likely kept confidential and thus inaccessible absent the discovery process.  Defendants like Xerox should not be permitted to avoid liability for indirect and/or willful infringement by keeping their corporate policies and conduct secret.

invention" was sufficient to plead induced infringement for period in which Huawei had knowledge of the patents-in-suit).

Further, American alleges that Xerox has induced infringement by inducing "affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf" to directly infringe by "importing, selling, offering to sell, and/or using the accused products." Dkt. 1 ¶ 78.  And the complaint provides additional details as to Xerox's active steps to sell, distribute, offer to sell, or import the accused products in an infringing manner. *Id*. ¶¶ 79-88.  The complaint alleges knowledge of the patents-in-suit and knowledge that the induced acts constitute infringement.  *Id*. ¶ 86.  That is sufficient to plead inducement. *See Lifetime Indus.*, 869 F.3d at 1380.  So Xerox's attempt to characterize the complaint's detailed factual allegations as "bald conclusions" and lacking "any factual allegation," Mot. at 12-13, rings hollow.  Xerox's tactic of ignoring the multiple pages of allegations directed to Xerox's conduct, knowledge, and intent—specifically with respect to the accused products—is an illegitimate strategy that the Court should reject.

C.  American Plausibly Alleged Contributory Infringement

The complaint plausibly pleads a claim of contributory infringement of the unexpired patents.  First, the allegations meet the knowledge component for the reasons explained above. Second, the complaint alleges that third parties, including end users and customers, infringe the unexpired patents.  *See, e.g.*, Dkt. 1 ¶¶ 89, 97.  Third, the complaint alleges that the accused products possess special features that lack substantial noninfringing uses.  *See* Dkt. 1 ¶¶ 90 ("The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the '782 Patent, the '304 Patent[.]"), 92 ("The special features constitute a material part of the invention of one or more of the claims of the '782 Patent, the '304 Patent, and the '458 Patent and are not staple articles of commerce suitable for substantial non-infringing use.").

16

And, contrary to Xerox's assertion that American "does not identify any special features" or that the special features lack substantial noninfringing uses, Mot. at 14, the complaint indeed contains the allegations that Xerox claims are missing:

- "The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe …" Dkt. 1 ¶ 90.

- "As described above, the special features include improved wireless communication capabilities used in a manner that infringes [the asserted patents]." *Id*. ¶ 91; *see also, e.g., id.* ¶¶ 20-28, 35-41, 48-57 (alleging use of products in infringing manner)

- "The special features constitute a material part of the invention of one or more of the claims of the [asserted patents] and are not staple articles of commerce suitable for substantial non-infringing use." *Id*. ¶ 92.

Xerox simply ignores the ample factual allegations describing the accused products' special wireless features. More than this is not required at the pleading stage, "because such detail is likely only to be revealed via discovery." *Motiva*, 408 F. Supp. 3d at 836 n. 6.

Because the complaint's allegations indicate that the accused features are especially adapted for infringement, they raise a plausible inference that no substantial noninfringing uses exist. *See id.* ("Having plausibly alleged that [Defendant's] products have a software component that maps upon a claim limitation, the Court finds that [Plaintiff] has also alleged a lack of substantial noninfringing uses." (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009))); *see also id.* at 835 ("For purposes of a motion to dismiss under 12(b)(6), a well-pled allegation that an accused product (or its component) has 'no substantial noninfringing uses' is independently sufficient to plead the knowledge element of contributory infringement."). The complaint's allegations easily meet the requirement to plead a plausible claim for contributory infringement. *See Lifetime Indus.*, 869 F.3d at 1381.[12]

---

[12] *See also Motiva*, 408 F. Supp. 3d at 836 n. 6 ("Requiring Motiva to ***prove*** that HTC's software component only has a single use—instead of simply alleging as much—would 'effectively require[] [Motiva] to prove, pre-discovery, the facts necessary to win at trial.").

Finally and relatedly, Xerox's argument purporting to identify non-infringing uses, *see* Mot. at 14, must fail.  Here, Xerox invites error by presenting factual allegations from outside the complaint and asking the Court to weigh competing sets of facts and inferences at the motion to dismiss stage.[13]  *E.g., Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Lormand*, 565 F.3d at 267 ("[U]nder Rules 8(a)(2) and 12(b)(6), at the pleading stage, the plaintiff is only required to plead a plausible cause of action; we are not authorized or required to determine whether the plaintiff's plausible inference … is equally or more plausible than other competing inferences …").  To the extent Xerox wishes to raise a factual dispute regarding substantial non-infringing uses, these allegations belong in its answer, and the parties must have the opportunity to take discovery and present evidence relevant to this claim.

## IV.    AMERICAN SUFFICIENTLY PLEADED WILLFUL INFRINGEMENT AS TO THE UNEXPIRED PATENTS

As explained above, American's allegations of willful blindness are enough to support the knowledge element of its willful infringement claims as to the unexpired patents-in-suit, addressing Xerox's arguments at pages 15-16 of its Motion.

Xerox next argues that American's willfulness allegations are flawed because they do not show "egregious" behavior.  Mot. at 17.  But whether infringing conduct was sufficiently "egregious" is not an element of willful infringement at all.  This principle was confirmed by the Federal Circuit's decision earlier this week in *SRI II*.  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, No. 2020-1685, 2021 WL 4434231 (Fed. Cir. Sept. 28, 2021) ("*SRI II*").  There, the Federal Circuit expressly noted that "*Halo* … did not disturb the substantive standard for subjective willfulness," and that "under *Halo*, **the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement**."  *Id.*, 2021 WL 4434231, at *3 n.1, *4 (emph. added).  And this Court has previously recognized as much.  *See Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-209-ADA, 2019 WL 3940952, at *3 (W.D. Tex. Jul. 26, 2019) ("To state a claim for

---

[13] Indeed, weighing disputed issues of material fact is not proper even at the summary judgment stage.  That is the role of the factfinder, not the Court.

willful infringement, 'a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent, and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.") (citing *Valinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *6 (D. Del. May 29, 2018)).

Instead, "egregiousness" is something for the court to consider in exercising its discretion to enhance damages after the jury's finding of willfulness. *See SRI II,* 2021 WL 4434231, at *4 ("To eliminate the confusion created by our reference to the language 'wanton, malicious, and bad-faith' in *Halo*, we clarify that it was not our intent to create a heightened requirement for willful infringement.  Indeed, that sentence from *Halo* refers to 'conduct warranting ***enhanced damages***,' ***not conduct warranting a finding of willfulness***.") (emph. added); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2018 WL 2149736, at *8 (E.D. Tex. 2018) ("the jury must decide whether the infringement was ***intentional***, and then the court must decide whether the intentional conduct was ***egregious*** enough to justify enhanced damages") (emph. added), *vacated on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020); *see also Valinge Innovation AB*, 2018 WL 2411218, at *6-9 (collecting and analyzing cases, and concluding that egregiousness is not a required element of willfulness, in part because "the *Halo* Court did not consider 'egregiousness' to be a necessary component of willful infringement"), *cited with approval by Parity Networks*, 2019 WL 3940952, at *3.

Xerox's cases do not establish otherwise.  First, its suggestion that *Halo* or *SRI Int'l., Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295 (Fed. Cir. 2019) ("*SRI I*"), address pleading standards, *see* Mot. at 17, is simply false.  Second, *SRI I* is further distinguishable because, contrary to Xerox's argument that "[t]he Federal Circuit has explicitly addressed this argument and found a policy of not reviewing patents cannot support a finding of willfulness," that case is limited to the specific facts that defendants' witnesses had not read the patent-in-suit prior to their depositions—not a company-wide policy or the affirmative acts of instructing employees not to read patents.  *See id*.

at 1309.  Finally, and as discussed above, *SRI II* clearly holds that egregious conduct is not an element of willfulness.  *See SRI II*, 2021 WL 4434231, at *3 n.1, *4.

## V.     IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED

If the Court rules that any of American's claims are not adequately pleaded, American requests an opportunity to amend its complaint to address any deficiencies that the Court finds, including the opportunity to take relevant discovery prior to amendment, or, at a minimum, to incorporate its preliminary infringement contentions by reference once those are submitted. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016) (finding an abuse of discretion for the district court's failure to grant leave to amend and explaining "the language of this rule evinces a bias in favor of granting leave to amend," and "[a] district court must possess a substantial reason to deny a request.") (citations and internal quotations omitted).  "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.  Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Potter v. Bexar Cnty. Hosp. Dist.*, 195 Fed. Appx. 205, 208 (5th Cir. 2006) (internal quotations omitted). Granting leave to amend is especially appropriate when dismissing for failure to state a claim. *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977).

Without even acknowledging this binding precedent, and without providing a single reason why the Court should depart from it, Xerox boldly requests that American not be allowed to file an amended complaint if the original complaint is dismissed.  Mot. at 2, 17.  But, in accordance with Fifth Circuit precedent, leave to amend should be granted if the Court rules that any of American's claims are not adequately pleaded.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny Xerox's Motion to Dismiss.

20

Dated: October 1, 2021

Respectfully submitted,

/s/ *C. Ryan Pinckney*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for American Patents, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 1, 2021.

*/s/ C. Ryan Pinckney*
C. Ryan Pinckney
