**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>    Plaintiff,<br><br>v.<br><br>XEROX CORPORATION and DAHILL OFFICE TECHNOLOGY CORPORATION D/B/A XEROX BUSINESS SOLUTIONS SOUTHWEST,<br><br>    Defendants. | CIVIL ACTION NO. 6:21-cv-638-ADA |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1
II. AP'S ALLEGATIONS OF PRE-SUIT INDIRECT AND WILLFUL INFRINGEMENT SHOULD BE DISMISSED BECAUSE AP HAS FAILED TO ADEQUATELY PLEAD THAT XEROX WAS WILLFULLY BLIND TO THE UNEXPIRED PATENTS. ........... 1
III. AP RELIES ON INDUSTRY STANDARDS FOR ITS DIRECT INFRINGEMENT ALLEGATIONS BUT FAILED TO ALLEGE THAT INDUSTRY STANDARD COMPLIANCE WOULD NECESSARILY LEAD TO INFRINGEMENT OF ANY CLAIM ELEMENT. ........................................................................................................ 4
IV. CONCLUSION ............................................................................................................. 10

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Audio MPEG, Inc. v. HP Inc.*,
   No. 2:15-cv-00073-HCM-RJK, 2016 U.S. Dist. LEXIS 181710 (E.D. Va.
   June 29, 2016) ................................................................................................................6

*Castlemorton Wireless, LLC v. Bose Corp.*,
   No. 6:20-CV-00029-ADA, 2020 U.S. Dist. LEXIS 211735 (W.D. Tex. Jul.
   22, 2020) ...............................................................................................................3, 4, 5

*Castlemorton Wireless, LLC, v. Comcast Corp. et al.*,
   No. 6:20-cv-00034-ADA, Minute Entry Granting Motion to Dismiss (W.D.
   Tex. July 25, 2020) ........................................................................................................3

*Commil USA, LLC v. Cisco Sys.*,
   575 U.S. 632 (2015) ...................................................................................................1, 4

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ..................................................................................5, 6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ...............................................................................................1, 2, 4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ...................................................................................................1

*Inhale, Inc. v. Gravitron, LLC*,
   No. 1-18-CV-762-LY, 2018 U.S. Dist. LEXIS 223241 (W.D. Tex. Dec. 10,
   2018) .........................................................................................................................3, 4

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
   No. 1-18-CV-309-LY, 2018 U.S. Dist. LEXIS 225719 (W.D. Tex. Nov. 30,
   2018) ...............................................................................................................................4

*Parity Networks, LLC v. Cisco Sys.*,
   No. 6:19-CV-00207-ADA, 2019 U.S. Dist. LEXIS 144094 (W.D. Tex. July
   26, 2019) .....................................................................................................................3, 4

*Parus Holdings Inc. v. Apple Inc.*,
   No. 6:19-cv-00432-ADA, Dkt. 101 (W.D. Tex. Jan. 31, 2020) ....................................3

*Stragent, LLC v. BMW of N. Am., LLC*,
   No. 6:16-cv-446-RWS-KNM, 2017 U.S. Dist. LEXIS 156084 (E.D. Tex. Mar.
   3, 2017) ..................................................................................................................5, 6, 9

*USC IP P'ship, L.P. v. Facebook, Inc.*,
   No. 6:20-CV-00555-ADA, 2021 U.S. Dist. LEXIS 137424 (W.D. Tex. July
   23, 2021) ................................................................................................................2, 4, 10

*VLSI Tech. LLC v. Intel Corp.*,
   No. 6-19-cv-00254-ADA, 2019 U.S. Dist. LEXIS 155285 (W.D. Tex. Aug.
   06, 2019) ...................................................................................................................3, 4

I.      INTRODUCTION

There is no dispute regarding two key facts: (1) that Xerox Corporation and Dahill Office Technology Corporation (collectively, "Xerox") had no knowledge of the Unexpired Patents[1] before Plaintiff American Patents LLC ("AP") filed its complaint, and (2) that AP did not allege that practicing the cited standards necessarily leads to infringement of the Asserted Patents.[2]

On the first point, AP tries to convince this Court that its prior decisions on pre-suit knowledge and willful blindness are wrong. But it is AP that has failed to meet the pleading standard, and its claims of pre-suit indirect and willful infringement in Counts I-III should be dismissed.

On the second point, AP engages in misdirection by presenting scores of irrelevant information and arguments in an attempt to cover the fact that it failed to meet the pleading requirements for patent infringement claims that rely on compliance with industry standards. Accordingly, AP's claims of direct infringement and post-filing indirect and willful infringement claims in Counts I-IV should also be dismissed.

II.     AP'S ALLEGATIONS OF PRE-SUIT INDIRECT AND WILLFUL INFRINGEMENT SHOULD BE DISMISSED BECAUSE AP HAS FAILED TO ADEQUATELY PLEAD THAT XEROX WAS WILLFULLY BLIND TO THE UNEXPIRED PATENTS.

Knowledge or willful blindness is a requirement of induced, contributory, and willful infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *Commil USA, LLC v. Cisco Sys.*,

---

[1] Counts I-III and the Additional Allegations Regarding Infringement claim indirect and willful infringement of the '782 patent, the '304 patent, and the '458 patent (collectively, "Unexpired Patents").
[2] Counts I-IV of AP's complaint claim direct infringement of U.S. Patent Nos. 7,088,782 ("'782 patent"), 7,310,304 ("'304 patent"), 7,706,458 ("'458 patent"), and 6,847,803 ("'803 patent") (collectively, "Asserted Patents").

1

575 U.S. 632, 639 (2015). Because AP admits that Xerox had no pre-suit knowledge and has failed to adequately plead willful blindness of the Unexpired Patents, AP's allegations of pre-suit indirect and willful infringement should be dismissed.

AP does not even allege that Xerox had knowledge of the Unexpired Patents before AP filed its complaint. *See* Dkt. 25 at 11. Rather, AP argues that Xerox was willfully blind to the Unexpired Patents. *Id.* However, knowledge based on willful blindness exists only where "(1) the defendant . . . subjectively believe[d] that there [was] a high probability that a fact exists and (2) the defendant . . . [took] deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc.*, 563 U.S. 754, 769 (2011). In order to adequately plead willful blindness, both factors need to be adequately alleged. But AP has not shown either element.

As to the first "subjective belief" requirement, AP does not even allege that Xerox subjectively believed that there was a high probability that the Unexpired Patents existed, and again admits that Xerox had no such knowledge. *See* Dkt. 25 at 11. On this basis alone, Xerox's motion to dismiss pre-suit indirect and willful infringement should be granted.

With regard to the second "deliberate action" requirement, the only allegations AP relies on are an alleged Xerox policy and a law review article from 2008. *Id.* at 11-12. However, absent any alleged knowledge or information that the Unexpired Patents even existed, there would be no reason for Xerox to take deliberate actions to avoid learning of their existence. Therefore, Xerox could not have been willfully blind to the existence of the Unexpired Patents, and AP's claims of pre-suit indirect and willful infringement should be dismissed in line with this Court's prior holdings. *See USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 U.S. Dist. LEXIS 137424, at *6-7 (W.D. Tex. July 23, 2021) (granting defendant's motion to dismiss pre-suit indirect and willful infringement claims based on the allegation: "Defendant has a policy or

practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of USC IP's patent rights."); *see also Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-00432-ADA, Dkt. 101 (W.D. Tex. Jan. 31, 2020); *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 U.S. Dist. LEXIS 211735, at *13 (W.D. Tex. Jul. 22, 2020) ("*Castlemorton*"); *Castlemorton Wireless, LLC, v. Comcast Corp. et al.*, No. 6:20-cv-00034-ADA, Minute Entry Granting Motion to Dismiss (W.D. Tex. July 25, 2020) (text order only); *VLSI Tech. LLC v. Intel Corp.*, No. 6-19-cv-00254-ADA, 2019 U.S. Dist. LEXIS 155285, at *3 (W.D. Tex. Aug. 06, 2019) ("The Court finds that Intel's policy that forbids its employees from reading patents held by outside companies or individuals is insufficient to meet the test of willful blindness."); *see also Inhale, Inc. v. Gravitron, LLC,* No. 1-18-CV-762-LY, 2018 U.S. Dist. LEXIS 223241, at *9 (W.D. Tex. Dec. 10, 2018).

AP's allegations find no basis in any fact—nor does AP even allege any fact—that would suggest that Xerox had any pre-suit knowledge of the Unexpired Patents, for example citations to the Unexpired Patents in Xerox's own patents or pre-suit correspondence between the parties as in *Parity Networks, LLC v. Cisco Sys.*, No. 6:19-CV-00207-ADA, 2019 U.S. Dist. LEXIS 144094, at *6-7 (W.D. Tex. July 26, 2019). Instead, AP's allegations are rooted in generalizations made in a law review article from 2008 that hypothesize that patent law would need to be restructured in "significant ways" to encourage component-industry manufacturers and other companies to conduct reasonable patent searches and reasonably negotiate patent licenses. *See* Dkt. 25 at 12, Dkt. 25-1 at 16. But generalizations about some companies allegedly instructing their engineers not to read patents to avoid the specter of willful infringement is irrelevant to when Xerox was first informed of the existence of the Unexpired Patents, which was upon service of the complaint. Although AP and its counsel have successfully relied on nearly identical boilerplate allegations in

3

other districts, those holdings are outliers. *See* Dkt. 25 at 12, 13 n. 8; *see*, *e.g.*, *USC IP P'ship, L.P.*, 2021 U.S. Dist. LEXIS 137424, at *6-7; *Castlemorton*, 2020 U.S. Dist. LEXIS 211735, at *13; *VLSI Tech. LLC*, 2019 U.S. Dist. LEXIS 155285, at *3; *Inhale, Inc.*, 2018 U.S. Dist. LEXIS 223241, at *9; *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 U.S. Dist. LEXIS 225719, at *6-7 (W.D. Tex. Nov. 30, 2018). In contrast, this Court takes the better view and is entitled to "draw on its judicial experience and common sense" to determine which allegations state a plausible claim for relief. *Parity Networks, LLC*, 2019 U.S. Dist. LEXIS 144094, at *3 (quoting *Ashcroft v. Iqbal*, 556 U.S., 662, 679 (2009)). Moreover, this Court's holdings comport with precedent requiring allegations to bear some relevance to Xerox's conduct. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639–40 (2015); *Global-Tech Appliances, Inc.*, 563 U.S. at 769–70. Therefore, pre-suit indirect and willful infringement of Counts I–III should be dismissed.

### III.  AP RELIES ON INDUSTRY STANDARDS FOR ITS DIRECT INFRINGEMENT ALLEGATIONS BUT FAILED TO ALLEGE THAT INDUSTRY STANDARD COMPLIANCE WOULD NECESSARILY LEAD TO INFRINGEMENT OF ANY CLAIM ELEMENT.

The parties agree that AP never alleges that implementing the IEEE 802.11n, 802.11ac and 802.11-2016 standards would *necessarily* result in infringement of the Asserted Patents. In its opposition, AP fails to address the core issue that its standards-based allegations fail to properly allege infringement by any Xerox product, choosing instead to introduce a litany of red herring arguments meant to distract attention from this fatal flaw.

First, AP argues that a complaint is only required to (1) identify the allegedly infringing products, (2) describe the asserted patent(s), and (3) describe the corresponding accused technology. *See* Dkt. 25 at 2. This may suffice when a patentee's allegations compare the asserted claims to the accused products. But to adequately plead patent infringement by comparing the claims to an industry standard the plaintiff must additionally allege that the asserted patent covers

4

*every* possible implementation of the standard. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1328 (Fed. Cir. 2010) [3]; *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 U.S. Dist. LEXIS 156084, at *12 (E.D. Tex. Mar. 3, 2017); *Castlemorton*, 2020 U.S. Dist. LEXIS 211735, at *14. However, infringement cannot be established in this manner when the standard does not cover all implementations, lacks the level of specificity required to establish that practicing the standard would always result in infringement, or if the relevant section of the standard is an optional feature. *Fujitsu Ltd.*, 620 F.3d. at 1327–28. As explained in Xerox's opening brief, AP's complaint failed to meet these requirements.

Next, AP argues that the claims cover Xerox's implementation of the standard rather than the standard itself. *See* Dkt. 25 at 4. However, a close examination of the complaint reveals that AP uses the screenshots of Xerox websites only to identify the accused products and the WiFi Alliance certificates only to identify the corresponding IEEE standard. But in the end AP relies on the standards themselves (and in some instances merely a description of how the standard *might* be implemented) for *every* claim limitation. AP's argument that this is not a standards case is contradicted by the complaint itself and lacks credibility.

In fact, the entire complaint follows a pattern of citing features of and documents describing the IEEE standards rather than the features of the accused products to allege infringement of the Asserted Patents. Notably, the term "802.11" appears 116 times, the term "standard" appears 62

---

[3] AP takes issue with Xerox's citation of *Fujitsu* (*see* Dkt. 25 at 5), but in *Fujitsu* the plaintiffs' third amended complaint (and prior versions of the complaint) included the required allegations, so the insufficiency of the plaintiffs' pleading was not at issue as it is here. *See Fujitsu Ltd. v. Netgear Inc.*, No. 3:07-cv-00710-bbc, Dkt. 299 at ¶ 13 ("at least one claim in that patent must be deemed 'essential,' which the 802.11 Commercialization Agreement defines as a claim 'that would be necessarily and unavoidably infringed (in the absence of a license) by the implementation of the compulsory portions of the 802.11 Standard."), ¶ 19 ("Netgear boasts that it implements and complies with the 802.11 Standard while refusing to license patents that are necessarily and unavoidably infringed by products that implement the 802.11 Standard").

times, and the term "IEEE" appears 49 times in the complaint. *See* Dkt. 1. AP falsely argues that it did not rely exclusively on the standards themselves and that they compare the accused products to the claim limitations. *See* Dkt. 25 at 4. But even a cursory review shows that AP relies exclusively on the standards themselves. *See* Dkt. 1.

Had AP investigated the accused products to determine how they implement the applicable standards, AP surely would have said as much in its lengthy complaint. But AP has not plausibly stated facts that would even suggest that the accused products implement the cited portions of the standards. AP's opposition, like its complaint, includes scores of information, but it fails to – because AP cannot – point to even a single allegation that would meet the pleading standard for patent infringement claims that rely on industry standard compliance.

AP also argues without support that only complaints that rely solely on industry standards need to allege that the claims cover all implementations of the standard. *See* Dkt. 25 at 4. Even if this were true—which it is not—AP's infringement allegations rely exclusively on IEEE standards as explained above. *See Fujitsu Ltd.*, 620 F.3d. at 1327–28; *Stragent, LLC*, 2017 U.S. Dist. LEXIS 156084, at *8-9; *Audio MPEG, Inc. v. HP Inc.*, No. 2:15-cv-00073-HCM-RJK, 2016 U.S. Dist. LEXIS 181710, at *47 (E.D. Va. June 29, 2016). AP even admits that "***American relies on the standard for some elements***, Xerox's documentation and optional implementation of the standard for other elements, and technical literature ***suggesting that companies like Xerox*** implement the standard in a certain way for other elements." Dkt. 25 at 4 (emphasis added). In other words, AP acknowledges that it has no idea how Xerox implements the standards or whether Xerox's implementation would even infringe. The requirement that implementation of the standard ***necessarily*** results in infringement was put in place to avoid such unmeritorious claims.

Additionally, as noted in Xerox's opening brief, by relying on citations to documents that

6

explain the industry standards, AP effectively admits that the standards themselves do not include enough detail to cover every implementation of the applicable standard, let alone the specific limitations claimed in the asserted patents. *See* Dkt. 23 at 8. Although AP attempts to paint its citation of "WiFi Alliance certification documents" and "technical literature regarding implementation of the 802.11n and above standards" in a positive light, AP fails to squarely confront the fact that it has failed to meet the pleading standard for the elements that AP seeks to establish via compliance with the applicable industry standard. Accordingly, the complaint is nothing more than a veiled fishing expedition.

For example, Count I, Paragraph 20 of the complaint states, "Xerox used products and/or systems including, for example, its Xerox AltaLink … families of products that include the 802.11n and above capabilities ('accused products')." Dkt. 1 at 7. This text is followed by screenshots of the websites for the accused products and WiFi Alliance Certificates that indicate the applicable product is interoperable with other products that practice the IEEE 802.11n standard. *Id.* at 7-15. Then, without more, Paragraph 21 asserts in conclusory fashion that the accused products infringe claim 30 of the '782 patent. *Id.* at 16.

Regarding the preamble of claim 30, Paragraph 22 states, "the accused products support IEEE 802.11 n/ac standards and MIMO technology. According to the IEEE 802.11n standard, the PLCP Protocol Data Unit (PPDU) has training fields and signaling fields for helping in synchronizing the communication system." *Id.* This allegation is again followed by WiFi Alliance certificates for the accused products and figures and tables about certain aspects of the IEEE 802.11n standard taken from http://luci.subsignal.org/~jow/802.11n-2009.pdf [4] and

---

[4] Contrary to AP's statement to the contrary (Dkt. 25 at 6, n. 3), this website could not be accessed via archive.org on October 8, 2021.

https://www.cnrood.com/en/media/solutions/Wi-Fi_Overview_of_the_802.11_Physical_Layer.pdf. In other words, this allegation yet again depends *entirely* on the standard.

As another example, Paragraph 23 of the complaint includes the allegation that the accused products include the first method step of "producing a frame of data comprising a training symbol that includes a synchronization component that aids in synchronization, a plurality of data symbols, and a plurality of cyclic prefixes." *See* Dkt. 1 at 21-22. The remaining text of Paragraph 23 and the screenshots that follow are *exclusively* about the IEEE 802.11n standard. *Id.* at 22-24. For example, AP compares the training symbol, data symbols, and cyclic prefixes to the non-HT and HT-mixed format preambles that may be used to implement the IEEE 802.11n standard. *Id.* Even though AP relies *exclusively* on the standard for its infringement allegations, AP disingenuously now argues that it only relies on the standard for some elements. *See* Dkt. 25 at 4. But because AP's complaint here relies entirely on the IEEE 802.11n standard, AP would need to allege that Xerox practices this implementation, or that there are no other implementations possible. To the contrary, AP fails to allege either.

In another example, at Paragraph 37 of Count II, AP alleges "[t]he accused products *support* IEEE 802.11 n/ac standards and MIMO technology" (emphasis added); *see also id.* at ¶¶ 40, 50. However, AP would still need to allege that the accused products are configured as claimed. Similarly, stating that the accused products "include 802.11n *capabilities*" fails to indicate what capabilities the accused products include and how they correspond to any claimed element. Dkt. 1, at ¶ 35 (emphasis added); *see also id.* at ¶¶ 48, 91. Moreover, the third party sources cited by AP indicate that several features are "optional." *Id.*, at ¶ 37, 38 ("HT-mixed format and HT-greenfield format transmissions *can be* generated using a transmitter consisting of the following blocks: …

8

an FEC encoder ***may include*** a binary convolutional encoder … This ***may include*** one of the following:…" (emphasis added); *see also id.* at ¶¶ 51, 55 ("processing ***can*** be done in several ways" indicate the applicable features are optional (emphasis added)). Optional features cannot establish necessary infringement of an alleged standard, and therefore AP has failed to adequately allege direct infringement based on that standard.

Similarly, AP fails to respond to Xerox's arguments regarding Counts II and III, namely that AP fails to identify any structures in the accused Xerox products that purportedly meet the limitations, including the Orthogonal Frequency Division Multiplexing (OFDM) modulator. *See* Dkt. 23 at 7. Although AP again points to the standard and documentation describing the standard to identify an OFDM system (*see* Dkt. 25 at 5), AP does not point to where in the standard that feature is referred to as necessary. Nor is it apparent from the standard that no other implementations may be used to support the IEEE 802.11n standard. Because AP has failed to meet the pleading requirements for claims that rely on industry standards, AP's allegations of direct infringement of the '304 and '458 patents should be dismissed.

AP also argues that it "provides detail above and beyond the complaint in *Stragent*." Dkt. 25 at 5. However, AP glosses over the failing it shares with *Stragent*—that to rely on an industry standard for a claim of direct infringement the complaint must allege that implementing the standard would ***necessarily*** lead to infringement of the asserted claim(s). *Stragent, LLC*, 2017 U.S. Dist. LEXIS 156084, at *10. Rather, as in *Stragent*, AP's allegations and the cited documents use terms such as "support," "capabilities," "can be," and "may include" that fall short of the requirement that practicing the standard necessarily would result in infringement of at least one asserted claim. As such, AP has failed to adequately plead direct infringement of the asserted apparatus claims, i.e., claim 1 of the '304 patent and claim 1 of the '458 patent. *See* Dkt. 1, at ¶¶

36, 37, 49, 50.

Likewise, Xerox argued that AP failed to allege that implementation of IEEE standards by the accused products ***necessarily*** result in infringement of the claimed methods. *See* Dkt. 25 at 6-8. But here again, AP's arguments in opposition do not address AP's failure to properly plead a standards-based infringement theory, and instead explain at length why AP has adequately pleaded divided infringement by citing to its allegations of use by Xerox and its "retailers and other business partners, and other business partners, and/or with its customers and end users." *See Id*. As it stands, AP's complaint fails to allege that Xerox and users of the accused products would necessarily infringe any of the asserted claims by enabling and using any of the optional WiFi features that are compatible with IEEE standards.

In sum, AP has failed to adequately plead direct infringement, and because its claims of post-filing indirect and willful infringement require direct infringement by others, Counts I-IV of its complaint should be dismissed in their entirety.

## IV. CONCLUSION

For the foregoing reasons, Xerox respectfully requests that AP's claims for pre-suit indirect and willful infringement in Counts I-III be dismissed. Although Xerox submits that AP's claims for pre-suit indirect and willful infringement should be dismissed with prejudice, should the Court dismiss the complaint without prejudice, it should adhere to its practice of granting leave to amend only if discovery yields sufficient factual support for such claims. *See USC IP P'ship, L.P.*, 2021 U.S. Dist. LEXIS 137424, at *7. AP's claims for direct infringement and post-suit induced, contributory, and willful infringement in Counts I-IV should also be dismissed for failure to meet the pleading requirements for patent infringement claims that rely on industry standard compliance.

Respectfully submitted,

Dated: October 8, 2021 /s/ *Genevieve M. Halpenny*
Genevieve M. Halpenny (*pro hac vice*)
Thomas Hoehner  (*pro hac vice*)
Denis J. Sullivan (*pro hac vice*)
**BARCLAY DAMON, LLP**
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202
(315) 425-2700 (Telephone)
(315) 703-6249 (Facsimile)
thoehner@barclaydamon.com
dsullivan@barclaydamon.com
ghalpenny@barclaydamon.com

Barry K. Shelton
Texas State Bar No. 24055029
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
bshelton@sheltoncoburn.com
(512) 263-2165 (Telephone)
(512) 263-2166 (Facsimile)

*Attorneys for Defendants Xerox Corporation and Dahill Office Technology Corporation*

11

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system.

    /s/ *Barry K. Shelton*
    Barry K. Shelton